# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 26, 2009

No. 07-60757

Charles R. Fulbruge III
Clerk

ABOU KANE,

Petitioner

v.

ERIC H. HOLDER, JR., U.S. ATTORNEY GENERAL,

Respondent

Petition for Review of an Order of the
Board of Immigration Appeals

Before JONES, Chief Judge, and WIENER and BENAVIDES, Circuit Judges.

WIENER, Circuit Judge:

Petitioner Abou Kane, a native of Senegal unlawfully present in the United States, seeks review of an order of the Board of Immigration Appeals ("the BIA") reversing a decision of the immigration judge ("the IJ") that had granted Kane's application for withholding of removal. The BIA rejected Kane's derivative claims grounded in allegations that his minor U.S. citizen-daughters would be subjected to female genital mutilation ("FGM") when they accompany him and his wife to Senegal. Agreeing with the BIA that, under the current state of the law, Kane's derivative claim for withholding of removal is not cognizable and that we lack jurisdiction to consider his asylum claim, we deny review.

## I. FACTS AND PROCEEDINGS

Kane first entered the United States in 1989, staying for approximately 10 months before leaving for Gabon, where he operated a clothing business. In 1996, Kane illegally re-entered the United States, followed shortly thereafter by his wife, whom he had married two years earlier. They now have five children, including two daughters who are under ten years old and hold birthright citizenship of the United States.

In 2006, the Department of Homeland Security ("DHS") commenced proceedings against Kane by issuing a Notice to Appear, charging him with removability pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I). Following a hearing on that charge, the IJ found that Kane's removability had been established by clear and convincing evidence. After Kane declined to specify a country for removal, the IJ designated Kane's native Senegal as the removal country.

Kane then filed an application for cancellation of removal, withholding of removal, and protection under the Convention Against Torture ("CAT"). He claimed to be seeking to remain in the United States because his minor daughters would be subjected to FGM if he were removed to Senegal.

During a subsequent hearing before the IJ, Kane testified that he, his wife, and his daughters are all members of the Fulani tribe, which practices FGM. Kane stated that, because he would be unable to earn enough money in Senegal to support his family in the United States, his wife and daughters would have to accompany him if he were removed. According to Kane, he would be helpless to prevent members of his tribe from subjecting his minor daughters to FGM once they were in Senegal. As evidence of the risk to his daughters, Kane testified that his relatives recently requested that he bring the girls to Senegal

2

for the express purpose of FGM. When questioned whether he feared for his own safety, Kane replied that his family members and fellow tribesmen would likely humiliate him for opposing FGM, but that he did not believe that he would be beaten or physically tortured for his opposition, insisting that his primary concern was for his young daughters' health and well-being.

Kane's wife also testified at the hearing, explaining that, like her mother and sisters, she had been subjected to FGM as a young girl and had suffered serious negative health effects, including FGM-related complications in giving birth. Mrs. Kane testified that the Fulani tribal edict of FGM is so deeply ingrained that, if she and her daughters followed her husband to Senegal, it would only be a matter of time before someone — likely one of her or her husband's relatives — would perform FGM on her daughters, regardless where in Senegal the Kane family might choose to live or how vocal their opposition might be.

The IJ granted Kane's application for withholding of removal but dismissed his CAT claim as moot and did not address asylum. Finding that both Kane and his wife were credible witnesses, the IJ concluded that, if Kane were removed to Senegal, members of the Fulani tribe would likely take any steps necessary to ensure that his young daughters were subjected to FGM. The IJ reasoned further that Kane himself would likely suffer persecution for his opposition to FGM if he attempted to prevent tribal elders from subjecting his daughters to the process. Citing humanitarian grounds as an additional basis for granting Kane's request, the IJ explained that "it is, quite frankly, difficult for this Court to expose two young U.S. citizens to this practice, simply because their parents were not of status in this country."

The DHS appealed the IJ's decision to the BIA, framing the issue on appeal as whether an alien father may succeed on a derivative withholding claim based on a fear that his minor daughters — both U.S. citizens — would be subjected to FGM if the father were removed to his native country. The DHS advocated reversal of the IJ's decision on the grounds that (1) the Immigration and Nationality Act ("INA") does not authorize derivative claims for withholding of removal, and (2) the practice of FGM was in decline, as evidenced by the Senegalese government's criminalizing FGM and providing for terms of up to five years imprisonment for anyone who either directly commits the offense or orders it committed against a third person.

In Kane's brief on appeal to the BIA, he insisted that, although the IJ had correctly granted withholding of removal, he had failed to consider whether Kane is also eligible for asylum in addition to his eligibility for withholding of removal. Kane contended that, if removed to Senegal, he would be subject to persecution (1) as a member of a social group of "parents of minor daughters of the Fulani Tribe who have not had FGM, and who oppose the practice," (2) as a result of his political and religious opposition to FGM, and (3) by having to endure his daughters' FGM. Kane urged that if it deemed the IJ's withholding of removal to be in error, the BIA should not order him removed but should remand the case to the IJ for a determination regarding Kane's claims for asylum and relief under CAT.

The BIA reversed the IJ's order and directed that Kane be removed from the United States.[1] In holding that Kane could not establish eligibility for withholding of removal based solely on the fear that his daughters would be

---

[1] *In re A-K-*, 24 I. & N. Dec. 275 (BIA 2007).

forced to undergo FGM in Senegal, the BIA determined, *inter alia*, that (1) the INA does not authorize derivative claims for withholding of removal, (2) Kane had not established that he himself would be persecuted or tortured as a result of his opposition to the practice of FGM, (3) Kane's daughters, as United States citizens, could remain safely in the United States in the custody of their mother or a guardian ad litem after Kane's removal, and (4) if Kane's daughters did accompany him to Senegal, the family could likely prevent the girls from being subjected to FGM by settling in an area of relative safety. The BIA also declined to remand to the IJ for further consideration, ruling instead that (1) Kane's CAT claim failed because he did not allege that he had been tortured in the past or had a reasonable fear of torture in the future, and (2) Kane had waived any right to seek asylum by failing timely to raise the issue before the IJ.

In addition to petitioning this court for review of the BIA's removal decision, Kane asked the BIA to reconsider its rejection of his asylum application as untimely, contending that he had failed to raise the issue of asylum during the proceedings before the IJ because he had mistakenly believed that he was ineligible to do so. Kane insists that the IJ was obligated to inform him that he might be eligible for asylum, and that the failure to do so entitles Kane to apply for asylum now. The BIA denied reconsideration of Kane's asylum claim, and he did not seek review of that denial in his petition to us.

## II. ANALYSIS

### A.    Standard of Review

When the BIA conducts a *de novo* review of the record evidence and does not adopt any part of the IJ's decision, our review is limited to the BIA's

decision.[2]  For review of orders of removal under the INA, "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude the contrary."[3]  We review factual findings to determine if they are supported by substantial evidence in the record.[4]  "The substantial evidence standard requires only that the [BIA's] conclusion be based upon the evidence presented and be substantially reasonable."[5]  We will reverse the BIA only when the evidence is "so compelling that no reasonable fact finder could fail to find" in favor of the petitioner.[6]  "We may not reverse merely because we would have decided the case differently."[7]

## B.    Asylum

Before reaching the merits of Kane's petition for review, we must first address any jurisdictional problems that it raises.  In his brief to us, Kane claims — as he did to the BIA in his motion for reconsideration — that the IJ had a duty under 8 C.F.R. § 1240.11(c) to inform him that he was apparently eligible to apply for asylum.  According to Kane, the IJ's failure to inform him of his apparent eligibility entitles him to apply for asylum now.  In response, the DHS contends that we lack jurisdiction to resolve this issue because Kane did not

---

[2] *Girma v. I.N.S.*, 283 F.3d 664, 665 (5th Cir. 2002).

[3] 8 U.S.C. § 1252(b)(4)(B).

[4] *Mikhael v. I.N.S.*, 115 F.3d 299, 302 (5th Cir. 1997).

[5] *Ontunez-Tursios v. Ashcroft*, 303 F.3d 341, 350 (5th Cir. 2002).

[6] *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992).

[7] *Hassan v. Ashcroft*, 388 F.3d 661, 666 (5th Cir. 2004).

raise it before the BIA in his direct appeal, and that only matters addressed in that direct appeal are properly before us for review at this time.

We have jurisdiction to review a final order of removal.[8]  Judicial review of such an order is only available, however, if the applicant has exhausted all administrative remedies of right.[9]  Failure to exhaust an issue through administrative proceedings creates a jurisdictional bar, preventing our review of that issue.[10]  "An alien fails to exhaust his administrative remedies with respect to an issue when the issue is not raised in the first instance before the BIA — either on direct appeal or in a motion to reopen."[11]  "When a petitioner seeks to raise a claim not presented to the BIA and the claim is one that the BIA has adequate mechanisms to address and remedy, the petitioner must raise the issue in a motion to reopen prior to resorting to review by the courts."[12]

In Kane's brief on direct appeal to the BIA, he contended that the IJ had correctly granted withholding of removal but had erroneously failed to consider the merits of his asylum claim as well.  Kane claimed that he qualifies for asylum because, if removed, he would suffer persecution consisting of (1) emotional and economic suffering resulting from his daughters' being subjected to FGM, and (2) constant harassment from family and tribal members for his religious and political opposition to FGM.  Critically, however, Kane failed to

---

[8] 8 U.S.C. § 1252(a), (b).

[9] *Id.* § 1252(d)(1).

[10] *Wang v. Ashcroft*, 260 F.3d 448, 452 (5th Cir. 2001).

[11] *Id.* at 452-53 (citing *Goonswan v. Ashcroft*, 252 F.3d 383, 388-89 (5th Cir. 2001)).

[12] *Goonswan*, 252 F.3d at 390.

raise his "apparent eligibility" argument to the BIA on direct appeal. It was not until Kane filed his motion for reconsideration that he asserted to the BIA that the IJ's failure to inform him of his apparent eligibility for asylum should excuse his tardiness in applying. In the absence of that argument, the BIA ruled that Kane had waived any claim he might have to asylum by not timely raising the issue before the IJ.[13] As Kane's petition for review does not raise the BIA's subsequent denial of reconsideration of his time-barred asylum claim based on "apparent eligibility," however, the only decision properly before us now is the BIA's initial order denying withholding of removal and holding his asylum claim waived.[14] Consequently, we lack jurisdiction to review the merits of Kane's

---

[13] *See In re A-K*, 24 I. & N. Dec. at 281. In its initial order, the BIA explained the proceedings below in detail:

> At the time of [Kane's] May 18, 2006, Master Calendar hearing, the Immigration Judge gave him additional time to apply for all forms of relief for which he was eligible and advised him that any application that was not received at the time of the next hearing would be considered abandoned. However, at the time of the next hearing, which was held on July 5, 2006, counsel for [Kane] indicated that he was only applying for withholding of removal under section 241(b)(3) of the Act and protection pursuant to the Convention Against Torture. According to the regulations, '[i]f an application or document is not filed within the time set by the immigration judge, the opportunity to file that application or document shall be deemed waived.' We therefore find no basis for a remand for consideration of [Kane's] asylum claim in this matter.

*Id.* (internal citations omitted).

[14] This conclusion comports with the statutory text of 8 U.S.C. § 1252(b)(6), which contemplates the filing of separate petitions for review following both the BIA's initial order and the resolution of any subsequent motion to reconsider or reopen. *See* 8 U.S.C. § 1252(b)(6) ("When a petitioner seeks review of an order under this section, any review sought of a motion to reopen or reconsider the order shall be consolidated with the review of the order."); *see also Stone v. I.N.S.*, 514 U.S. 386, 394 (1995) ("By its terms [8 U.S.C. § 1252(b)(6)] contemplates two petitions for review and directs the courts to consolidate the matters."). In *Stone*, the

asylum claim.[15] To the extent that Kane seeks review of the BIA's initial holding that he waived his asylum claim, we find no error, particularly in light of the record that was before the BIA at the time of its decision.[16]

## C. Withholding of Removal

To be eligible for withholding of removal, an applicant must demonstrate a "clear probability" that he will be subject to persecution on his return to the country of removal.[17] The applicant may demonstrate such a probability by showing that it is more likely than not that his life or freedom would be

_____

Supreme Court noted that such an interpretation not only is compelled by the statutory text, but also furthers "considerations of administrative and judicial efficiency, as well as fairness to the alien." 514 U.S. at 398. As the Court explained:

> The consolidation provision in [§ 1252(b)(6)] reflects Congress' understanding that a deportation order is final, and reviewable, when issued. Its finality is not affected by the subsequent filing of a motion to reconsider. The order being final when issued, an alien has 90 days from that date to seek review. The alien, if he chooses, may also seek agency reconsideration of the order *and seek review of the disposition upon reconsideration....* When the original petition is still before the court, the court shall consolidate the two petitions.

*Id.* at 405-06 (emphasis added). In *Stone*, the Court affirmed the circuit court's holding that it lacked jurisdiction to review a petition for review filed more than 90 days after the issuance of the BIA's initial order of removal. *Id.* Presented with a somewhat analogous situation in the instant case, we lack jurisdiction to consider the BIA's denial of Kane's motion to reconsider because Kane has not petitioned for review of that order.

[15] Even if we were to consider the merits of this claim, it is doubtful that Kane would be entitled to relief, for essentially the same reasons we set forth below detailing why he cannot prevail on his claim for withholding of removal.

[16] Neither do we perceive error in the BIA's decision that Kane was ineligible for CAT relief, therefore obviating the need for remand to the IJ for further consideration. As the BIA correctly stated in its order, "[t]here is no legal basis for a derivative grant of such protection [when], as here, [Kane] has not alleged any past torture, or fear of future torture, to himself." *In re A-K-*, 24 I. & N. Dec. at 280.

[17] *Faddoul v. I.N.S.*, 37 F.3d 185, 188 (5th Cir. 1994).

threatened by persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.[18] Persecution has been construed to require a showing that "harm or suffering will be inflicted upon [the applicant] in order to punish [him] for possessing a belief or characteristic a persecutor sought to overcome."[19] "Demonstrating such a connection requires the alien to present specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution."[20]

In his petition to us, Kane raises several arguments that he had not presented to the BIA on direct appeal. For example, Kane now contends that he has a legal right to serve as his daughters' guardian for medical decisions, irrespective of his immigration status. According to Kane, removal would interfere with his constitutionally protected custodial rights by subjecting his daughters to FGM, thus violating his legal right both to live with his minor children and to control their medical treatment. We have no jurisdiction to

---

[18] *Bah v. Ashcroft*, 341 F.3d 348, 351 (5th Cir. 2003).

[19] *Faddoul*, 37 F.3d at 188. We have previously defined persecution as:

> The infliction of suffering or harm, under government sanction, upon persons who differ in a way regarded as offensive (e.g., race, religion, political opinion, etc.), in a manner condemned by civilized governments. The harm or suffering need not by physical, but may take other forms, such as the deliberate imposition of severe economic disadvantage or the deprivation of liberty, food, housing, employment or other essentials of life.

*Eduard v. Ashcroft*, 379 F.3d 182, 187 (5th Cir. 2004).

[20] *See Faddoul*, 37 F.3d at 188; *see also Efe v. Ashcroft*, 293 F.3d 899, 906 (5th Cir. 2002) (explaining that withholding of removal must meet a higher standard than asylum, which requires only a showing of past persecution or a well-founded fear of future persecution on one of the five stated grounds).

review issues raised for the first time in Kane's petition, which the BIA did not have the opportunity to consider in the first instance.[21]

As for the remainder of Kane's assertions, we are satisfied that the BIA's decision to deny withholding is supported by substantial evidence. For example, Kane claims that Fulani tribal elders enforcing the practice against his daughters would in effect be persecuting him. In its decision on direct appeal, the BIA conceded that there may be "cases where a person persecutes someone close to an applicant, such as a spouse, parent, child or other relative, with the intended purpose of causing emotional harm to the applicant, but does not directly harm the applicant himself."[22] As the BIA explained, however, "in such a case, the persecution would not be 'derivative,' as the applicant himself would be the target of the emotional persecution that arises from physical harm to a loved one."[23] After the BIA reviewed Kane's testimony and all the evidence in the record, it concluded that Kane had failed to demonstrate that he would be the target of such persecution. We see no reversible error in this decision, and note that Kane himself testified that Fulani tribal elders would likely enforce the practice against his daughters only because they believe that their culture compels them to do so and not as a way to persecute Kane for any particular belief or characteristic that he exhibits.

---

[21] *Roy v. Ashcroft*, 39 F.3d 132, 138 (5th Cir. 2004).

[22] *In re A-K-*, 24 I. & N. Dec. at 278.

[23] *Id.* According to the BIA, "[a]utomatically treating harm to a family member as being persecution to others within the family is inconsistent with the derivative asylum provisions, as it would obviate the need for these provisions in many respects." *Id.*

In response to Kane's contention that he would be persecuted simply for opposing the practice of FGM, the BIA concluded that he had failed to show that "it is more likely than not that his life or freedom would be threatened on account of his opposition to this practice."[24] In reaching this conclusion, the BIA cited as persuasive Kane's "repeated and specific testimony that he has no fear of any persecution to himself if he were to return to Senegal."[25] The BIA's determination on this point is supported by substantial evidence, particularly considering that Kane himself stated numerous times during his testimony that he did not fear any personal harm other than perhaps humiliation or harassment, neither of which rises to the level of persecution.[26]

Further, as we have previously held, the INA does not recognize derivative claims for withholding of removal.[27] Although Kane insists that he is not making a derivative withholding claim, this assertion is inconsistent with his testimony before the IJ.[28] To the extent that Kane does seek withholding based

---

[24] *Id.* at 280.

[25] *Id.*

[26] *See Tesfamichael v. Gonzales*, 469 F.3d 109, 116 (5th Cir. 2006) ("Persecution cannot be based on mere denigration, harassment, and threats."); *see also In re S-L-L*, 24 I. & N. Dec. 1, 14 n. 1 (Pauley, concurring) ("While FGM may be a pernicious form of persecution, it is difficult to understand why a fear that it may be performed on *another person*, albeit one's child, is a ground for asylum, any more than if a parent had a fear that a child would be singled out for persecution on account of political opinion, race, or religion.") (emphasis in original).

[27] *Arif v. Mukasey*, 509 F.3d 677, 682 (5th Cir. 2007) ("As Petitioner has asserted that she qualifies for withholding of removal based solely on her husband's claim, and there are no derivative benefits associated with a grant of withholding of removal, Petitioner has failed to demonstrate that the BIA erred in denying her request for withholding of removal.").

[28] We note, however, that even referring to Kane's application as a "derivative" claim for withholding of removal is somewhat misleading, particularly given that his daughters —

on a fear that his daughters will be subjected to persecution if they accompany him to Senegal, we see no error in the BIA's determination that Kane is not entitled to derivative withholding.

The BIA also reasoned that Kane could avoid the risk of his daughters being subjected to FGM altogether by having them remain in the United States, "which they are legally entitled to do, either by staying with the parent who is not currently in removal proceedings, or through the appointment of a guardian to ensure their welfare until such time as they reach majority."[29] The BIA alternatively concluded that, in light of recent efforts by the Senegalese government to frustrate the practice of FGM, "even if [Kane's] children were to accompany him to Senegal, they could avoid FGM by relocating to an area of comparative safety."[30] Although this admittedly presents Kane with a difficult and painful decision, we see no reversible error in the BIA's determination.

Other circuits are in accord. Presented with similar facts, the Seventh Circuit held in *Oforji v. Ashcroft* that an otherwise-removable alien is not entitled to withholding based solely on the possibility that her U.S. citizen-

---

both U.S. citizens — cannot themselves be subject to removal, and are therefore not in need of withholding of removal.

[29] *In re A-K-*, 24 I. & N. Dec. at 277. Although not currently the subject of removal proceedings, Mrs. Kane, an illegal immigrant, is potentially subject to removal in the future. As a result, we recognize that the only practical, long-term option available to Kane for leaving his daughters in the United States is through the appointment of a guardian or other legal representative.

[30] *Id.*

daughter might be subjected to FGM following the alien's removal.[31] In *Oforji*, the court stated:

> Although the threatened hardship for her children is apparent, there is no statutory or regulatory authority for [petitioner] to have her own deportation suspended because she fears for her children if they return to Nigeria with her. Of course, . . . as United States citizens [the daughters] have the right to stay here without her, but that would likely require some form of guardianship — not a Hobson's choice, but a choice no [parent] wants to make. Given the undesirable consequences of the choice she has to make, [petitioner] is in effect requesting that we amend the law to allow deportable aliens . . . to attach derivatively to the right of their citizen children to remain in the United States. Any such amendment is for Congress, not the courts, to consider.[32]

Recognizing that "any separation of a child from its [parent] is a hardship," the court nevertheless framed the legal issue before it as "whether this potential hardship to citizen children arising from the parent's deportation should allow an otherwise unqualified [alien] to append to the children's right to remain in the United States."[33] At least according to the Seventh Circuit, "[t]he answer is no."[34] The *Oforji* court explained that, although its holding left the illegal immigrant with a painful choice, "Congress has foreseen such difficult choices [and] has opted to leave the choice with the illegal immigrant, not the courts."[35]

---

[31] 354 F.3d 609, 618-19 (5th Cir. 2003). Here, the BIA specifically stated that it considered the facts of Kane's case "nearly identical" to those presented in *Oforji*.

[32] *Id.* at 617.

[33] *Id.* at 617-18.

[34] *Id.* at 618.

[35] *Id.* In *Niang v. Gonzales*, 492 F.3d 505 (4th Cir. 2007), the Fourth Circuit reached a similar result, holding that a Senegalese mother was not entitled to withholding of removal

Taken to their logical conclusions, Kane's contentions essentially suggest that any time an illegal immigrant from a country where FGM is practiced has a female child while present in the United States, he should prevail on a claim for asylum or withholding of removal. If Congress had intended such a broad expansion to our nation's immigration laws, however, it would have expressly provided for this result; it did not. In fact, the INA suggests just the opposite, *viz.*, that Congress did not intend asylum or withholding of removal in such a situation, preferring instead to leave for the illegal immigrant the difficult and painful choice of how to proceed.[36] As the Fourth Circuit stated in *Niang*, "there

___

based solely on the fear that her U.S. citizen-daughter might be subjected to FGM upon returning to Senegal. The court explained:

> We are, of course, mindful that the result reached here presents [petitioner] with a heart-wrenching dilemma: either allow [her daughter] to remain in the U.S. with her father but without her mother, or take [her daughter] to Senegal where [the mother] fears that [her daughter] will be forced to undergo FGM. The tragic nature of this choice is undeniable, but it does not warrant that we recognize a derivative claim where Congress has not seen fit to provide for it. Accordingly, consistent with the other circuits that have considered this question, we conclude that [petitioner] may not assert a derivative claim for withholding of removal based on the potential persecution of her U.S. citizen daughter if [petitioner] is removed to Senegal and her daughter accompanies her.

*Niang*, 492 F.3d at 514 (internal citations omitted). The court further explained that, "[w]hile it is entirely reasonable to believe that the law ideally should not present [parents] with such dilemmas, the existing law does." *Id.*

[36] It is important to differentiate derivative claims for asylum, which are expressly provided for by statute, from Kane's claims that are here under review. Derivative asylum claims typically involve the grant of asylum status to a spouse or minor child (but not a parent) who accompanies an alien already eligible for asylum status, even though the spouse or child might not otherwise be eligible for asylum. *See* 8 U.S.C. § 1158(b)(3). The reverse is presented here: Kane (the parent) seeks asylum or withholding based on the potential hardship that his removal might occasion for his minor children, both of whom hold birthright U.S. citizenship. The difference is significant. In the former, the child's derivative claim flows

15

is simply no statutory or regulatory authority for [an illegal immigrant] to claim withholding of removal based on threatened hardship to her U.S. citizen minor daughter. As Congress has not provided for such a derivative withholding claim, we will not judicially amend the statute to create one."[37]

## D.    UNHCR Guidance Note

After briefing in this matter was complete, Kane filed a letter pursuant to Federal Rule of Appellate Procedure 28(j) to apprise us of a guidance note recently issued by the United Nations High Commissioner for Refugees (the "UNHCR").[38] The UNHCR guidance note cited by Kane addresses a parent's claim of fear of persecution by virtue of the genital mutilation of his or her female child.[39] Although the UNHCR note is not binding on either this court or the BIA,[40] Kane asserts that it constitutes persuasive new authority in support of his claim, counseling in favor of remand to the BIA. The DHS opposes remand, arguing that the guidance note is not only non-binding, but is also unpersuasive, as it contradicts the express terms of the INA. Moreover, the DHS contends that the guidance note is beyond the scope of our review, which is limited by statute to the evidence in the administrative record.

---

from the parent's — a result that is expressly contemplated, through statute, by the initial grant of asylum. Under the latter framework, however, which is not contemplated by the INA, an illegal immigrant from a country that practices FGM could "create" a right to remain in the United States via asylum or withholding of removal simply by having a female child at any time during the immigrant's presence here.

[37] *Niang*, 492 F.3d at 512.

[38] U.N. High Commissioner for Refugees, *Guidance Note on Refugee Claims Relating to Female Genital Mutilation* (May 2009).

[39] *Id.*

[40] *I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 438-39 & n.22 (1987).

The Supreme Court has explained that, "[g]enerally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands."[41] Remand might also be appropriate when an intervening change in the law or binding precedent renders an agency's order unsustainable.[42] The UNHCR guidance note at issue, however, is not such a change: It neither constitutes binding precedent nor renders the BIA's order unsustainable.[43] Further, it is doubtful whether this particular guidance note offers persuasive authority, as it appears to contradict the express terms of the INA. Finally, even if we were inclined to remand for consideration of the guidance note, we likely lack the jurisdiction to do so, as 8 U.S.C. § 1252(b)(4)(A) expressly instructs us that we may only "decide the petition . . . on the administrative record."[44] We decline to remand.

### III. CONCLUSION

For the foregoing reasons, Kane's petition for review is DENIED.

---

[41] *I.N.S. v. Ventura*, 537 U.S. 12, 16 (2002).

[42] *See, e.g., Arce-Vences v. Mukasey*, 512 F.3d 167, 172-73 (5th Cir. 2007) (remanding to the BIA for further consideration in light of an intervening Supreme Court decision).

[43] *See I.N.S. v. Aguirre-Aguirre*, 526 U.S. 415, 427 (1999) ("The U.N. Handbook may be a useful interpretative aid, but it is not binding on the Attorney General, the BIA, or United States courts."); *see also Cardoza-Fonseca*, 480 U.S. at 439 n.22 ("We do not suggest . . . that the explanation in the U.N. Handbook has the force of law or in any way binds the INS . . . .").

[44] 8 U.S.C. § 1252(b)(4)(A) ("[T]he court of appeals shall decide the petition only on the administrative record on which the order of removal is based . . . .").