# United States Court of Appeals
## For the First Circuit

No. 17-1572

JOSE M. ALVARADO,

Petitioner,

v.

MATTHEW WHITAKER,[*]
ACTING UNITED STATES ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before
Torruella, Lipez, and Thompson,
Circuit Judges.

Matthew S. Cameron for petitioner.
Paul F. Stone, Senior Counsel for National Security Unit,
Office of Immigration Litigation, Civil Division, U.S. Department
of Justice, with whom Chad A. Readler, Principal Deputy Assistant
Attorney General, Civil Division, and Ethan B. Kanter, Acting
Chief, National Security Unit, Office of Immigration Litigation,
were on brief, for respondent.
Sayoni Maitra, Karen Musalo, Eunice Lee, and Center for Gender
& Refugee Studies were on brief for amicus curiae Center for Gender
& Refugee Studies.

January 24, 2019

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Acting Attorney
General Matthew G. Whitaker has been substituted for former
Attorney General Jefferson B. Sessions III as the respondent.

**LIPEZ**, **Circuit Judge**.  This case requires us to decide, as a question of first impression for our court, whether the "persecutor bar" -- which disqualifies certain persons from immigration relief -- applies to an applicant who assisted or participated in persecution but acted without a personal motive to do so.  The petitioner in this case, Jose Alvarado, is a Salvadoran native and citizen who concedes standing guard for his superiors while they engaged in an act of persecution.  He denies, however, that he shared their motive to persecute.

An immigration judge ("IJ") granted Alvarado cancellation of removal under the Nicaraguan Adjustment and Central American Relief Act ("NACARA") after concluding that the persecutor bar does not apply to Alvarado because he lacked a motive to persecute.  The Board of Immigration Appeals ("BIA") reversed the IJ's order, finding the persecutor bar applicable despite the absence of such a motive.

Alvarado seeks review of the decision of the BIA.  After careful consideration, we hold that a motive to persecute by an applicant who assisted or otherwise participated in persecution is not required for application of the persecutor bar.  Accordingly, we deny Alvarado's petition.

## A.  Factual Background

We draw the following facts from Alvarado's testimony before the IJ, which the IJ found to be credible.[1]  From 1981 to 1984, during El Salvador's Civil War, Alvarado served in the Salvadoran National Guard (the "National Guard"), which he joined "out of economic necessity" because of the lack of employment opportunities.  As a member of the National Guard, Alvarado "could earn enough . . . to just get by."

Alvarado's role in the National Guard was to patrol and provide security.  The specific incident at issue here occurred when Alvarado was patrolling a town.  Alvarado stopped a man and asked him for identification.  He then began to question the man. Alvarado's supervisors soon arrived at the scene, took over the questioning, and eventually moved the man to a different location for interrogation as a suspected guerilla.  During the interrogation, Alvarado stood guard while his superiors hit the man and placed needles under his fingernails.[2]

---

[1] The IJ noted "inconsistencies" in Alvarado's testimony, particularly in his description of the incident at issue.  However, the IJ credited Alvarado's explanation for the inconsistencies: anxiety, depression, and Post-Traumatic Stress Disorder, causing memory loss, confusion, and nervousness.

[2] Alvarado testified inconsistently as to what he saw or how many interrogations he witnessed. At one point, he testified that he did not witness the interrogation of any suspected guerillas by his superiors.  At another point, he testified that he provided security for at least five interrogations, including the incident

## B.  Applicable Law

NACARA provides, in relevant part, that Salvadoran citizens living in the United States are eligible for various forms of immigration benefits and relief from deportation, including "Special Rule Cancellation of Removal," if they meet certain requirements.  See 8 U.S.C. § 1229b.  However, a person otherwise eligible for cancellation of removal under NACARA is ineligible if he "ordered, incited, assisted, or otherwise participated in the persecution of an individual because of the individual's race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1231(b)(3)(B)(i) (emphasis added).  This restriction is referred to as the "persecutor bar."

We have noted that, although the persecutor bar has a "smooth surface," beneath it "lie a series of rocks" creating interpretive problems, including "the nature of the acts and motivations that comprise persecution, the role of scienter, whether and when inaction may suffice, and the kind of connection with persecution by others that constitutes 'assistance.'"

---

when he witnessed his superiors hit and put needles under the fingernails of a man he had detained.  From Alvarado's varying testimony, the IJ concluded that "roughly five times . . . [Alvarado's] superiors took an individual from [Alvarado's] custody" and "on one of those occasions [Alvarado] witness[ed] his superiors place needles under a detainee's nails during an interrogation."  The IJ relied on this single incident to find that Alvarado had participated in persecutory conduct.

Castañeda-Castillo v. Gonzales, 488 F.3d 17, 20 (1st Cir. 2007) (en banc).

In Castañeda-Castillo, we addressed one of these inquiries -- the role of scienter. See id. That case concerned an applicant for asylum who had participated in a military operation during which civilian villagers were massacred. See id. at 19. The applicant testified that, although his military unit participated in the operation, his squad was located miles away from the site of the massacre, and he had no knowledge of the massacre until three weeks after it had occurred. Id. Because Castañeda testified that he had no prior or contemporaneous knowledge of the village massacre, relief under NACARA hinged on whether the persecutor bar may apply to an alien whose conduct had the "objective effect" of aiding persecution but who had no prior or contemporaneous knowledge of the persecution. Id. at 20. Answering only this question, we held the persecutor bar "presumptively" inapplicable to an applicant who had no prior or contemporaneous knowledge of the persecution.[3] Id. at 22. We reasoned that such an interpretation was consistent with the meaning of the term persecution, which "strongly implies both scienter and illicit motivation," and common sense notions of

_____

[3] We noted there may be "gray-area cases where less than full and detailed knowledge may suffice" for the persecutor bar to apply, such as "cases of willful blindness or strong suspicions." Castañeda-Castillo, 488 F.3d at 21.

- 5 -

culpability, which dictate that a person is not accountable for wrongdoing of which he has no knowledge. Id. at 20.

**C.    The IJ's Decision**

Before the IJ, the government, citing Castañeda-Castillo, argued that the persecutor bar applied to Alvarado because he knowingly assisted or participated in the persecution of an individual because of that individual's political opinions. In turn, Alvarado, also citing Castañeda-Castillo, pointed to our statement there that "'persecution' strongly implies both scienter and illicit motivation," id. at 20, and contended that the bar was inapplicable to him because our precedent made persecutory motive a prerequisite for application of the bar.

In a written decision, the IJ found the persecutor bar inapplicable. Although the IJ found that Alvarado knowingly[4] participated in the persecution of the detainee, she cited the "illicit motivation" language in Castañeda-Castillo, and found that Alvarado's actions did not amount to "persecution" because Alvarado was not personally motivated by the victim's political beliefs. She credited Alvarado's testimony that "he captured detainees on the orders of his superiors as a consequence of his

---

[4] In support of the conclusion that Alvarado had prior or contemporaneous knowledge, the IJ cited the closing argument of counsel for Alvarado at the hearing, where counsel stated that Alvarado's "testimony establishes contemporaneous knowledge." It is not clear whether Alvarado conceded prior knowledge.

- 6 -

employment," and found that his actions were not motivated by a desire to persecute a detained guerilla on account of his political beliefs.

After finding that Alvarado met NACARA's remaining requirements, the IJ granted him special rule cancellation of removal.

## D.   The BIA's Decision

In an appeal to the BIA, the government argued that the persecutor bar applies to Alvarado and that persecutory motive is not required for application of the bar to an individual who assisted or otherwise participated in the persecution.   The BIA, noting that Alvarado "does not contest that he 'assisted' his superiors' actions and that their acts were committed on account of the victim's political opinion," or that he had "'prior or contemporaneous knowledge'" of those acts,[5] framed the critical question in this case as whether Alvarado "was required to have a

_____

[5] Although Alvarado contends in his petition for review to us that he has always contested whether he "assisted . . . or otherwise participated" in the interrogation tactics of his superiors, Alvarado did not address this question before the BIA. Nor did he dispute the IJ's finding that he had prior or contemporaneous knowledge. Indeed, in his brief to the BIA, he conceded that this element was met because he "witnessed the acts." Alvarado cannot "leapfrog over the BIA" by raising these arguments now. Ramirez-Matias v. Holder, 778 F.3d 322, 327 (1st Cir. 2015). In immigration cases, "a failure to present developed argumentation to the BIA on a particular theory amounts to a failure to exhaust administrative remedies as to that theory." Id.   Accordingly, we lack jurisdiction to review his claims concerning assistance and knowledge. See 8 U.S.C. § 1252(d)(1).

persecutory motive when he assisted in the persecution of the detainee."

The BIA emphasized NACARA's plain language barring relief for an alien who "assisted . . . in the persecution of an individual because of the individual's . . . political opinion." 8 U.S.C. § 1231(b)(3)(B)(i). The BIA reasoned that the phrase "because of" in the statute is best read to refer to the motivation of the persecutors -- not that of the alien-applicant who assisted the persecutors. Matter of J.M. Alvarado, 27 I. & N. Dec. 27, 29 (BIA 2017) (citing Bah v. Ashcroft, 341 F.3d 348, 351 (5th Cir. 2003)). The BIA concluded that, if Alvarado participated in persecution that occurred because of an individual's political opinions, his personal motivation was irrelevant to the application of the persecutor bar. Because it was undisputed that the conduct of Alvarado's superiors was based on the victim's political opinion, the BIA held that the persecutor bar applied to Alvarado, precluding NACARA relief. The BIA accordingly ordered Alvarado removed to El Salvador.

## II.

Because the BIA has conducted its own analysis, "we focus our review on the decision of the BIA." Gonzalez v. Holder, 673 F.3d 35, 38 (1st Cir. 2012). Our review of a decision invoking special rule cancellation of removal under NACARA is limited to "constitutional claims and questions of law." Gonzalez-Ruano v.

Holder, 662 F.3d 59, 63 (1st Cir. 2011). Here, we are presented with a legal question, i.e., the meaning of the persecutor bar. We review the BIA's legal conclusions de novo. McCreath v. Holder, 573 F.3d 38, 41 (1st Cir. 2009).

Alvarado argues that Castañeda-Castillo controls the outcome of this case, citing our discussion of the meaning of "persecution" in that decision, where we said "the term 'persecution' strongly implies both scienter and illicit motivation." See 488 F.3d at 20. However, Alvarado is wrong about the import of the "illicit motivation" language for two reasons. First, although we said in Castañeda-Castillo that "the term 'persecution' strongly implies both scienter and illicit motivation," that decision focused on the role of knowledge in the persecutor bar, not on motive. See id.; see also id. at 22 ("This would be a different case if the evidence clearly established that Castañeda had guilty knowledge[.]"); cf. Negusie v. Holder, 555 U.S. 511, 528 (2009)(Scalia, J., concurring) (finding no reason why the BIA cannot consider questions of knowledge "separate and apart" from questions of motive). Castañeda conceded that "had [he] been aware in advance of a plan to murder civilians, his role . . . could be treated as culpable assistance." Castañeda-Castillo, 488 F.3d at 20. For this reason, we addressed only the "narrow[]" inquiry of "whether the persecutor bar would apply to

Castañeda if he had no prior or contemporaneous knowledge of the murder of civilians."  Id. at 20 (emphasis added).

Second, the language Alvarado cites concerns the meaning of "persecution," rather than "assist[ance]" or "participat[ion]." See id. at 20 (describing persecution as "impl[ying] both scienter and illicit motivation"); id. at 20 n.1 (citing Random House Dictionary of the English Language (2d ed. unabr. 1987) ("The dictionary defines 'persecute' as 'to pursue with harassing or oppressive treatment, esp. because of religion, race, or beliefs[.]'")).  Plainly, persecution requires illicit motivation, as the persecutor bar itself requires.  See 8 U.S.C. § 1231(b)(3)(B)(i) (requiring that persecution be on account of "race, religion, nationality, membership in a particular social group, or political opinion").  Hence, there is nothing at all surprising about the reference in Castañeda-Castillo to illicit motive when discussing the meaning of persecution, even though the question of the motive of the persecution was never at issue. Rather, the question was the link between knowledge and culpability within the meaning of the persecutor bar.

Now faced with the question of the link between motive and culpability, we agree with the BIA that the persecutor bar applies to an alien who knowingly and willingly aided in persecution, but did so without a persecutory motivation.  First, as the BIA explained, the syntax of the persecutor bar supports

the agency's interpretation.  The statute bars from relief an alien who "ordered, incited, assisted, or otherwise participated" in "persecution . . . because of" enumerated protected grounds.  As a general rule, a modifier -- that is, a word or clause that limits or adds to the meaning of another word -- is adjacent to the word it modifies or describes.[6]  See Jane Straus, et al., The Blue Book of Grammar and Punctuation 23 ("Place descriptive words and phrases as close as is practical to the words they modify.") (11th Ed. 2014).  Thus, here, "because of" modifies "persecution," indicating that the pertinent inquiry is whether the persecution was motivated by protected grounds.  By contrast, no such limitation is attached to the actions of the person who assists.  Rather, the persecutor bar by its terms applies to any "alien who . . . assisted, or otherwise participated" in the persecutory conduct.  Consequently, the structure of the subsection indicates that, although the persecutors must be motivated by a protected ground, the participation of the alien need not be so motivated.

---

[6] To demonstrate, consider the two sentences: (1) Mary saw the dog that used to be hers behind the house.  (2) Mary saw the dog behind the house that used to be hers.  In the first sentence, "that used to be hers" modifies "dog," indicating that the dog was formerly Mary's.  In the second sentence, "that used to be hers" modifies "house," indicating that Mary had formerly owned the house.

See Bah, 341 F.3d at 351 (employing similar reasoning);[7] accord Singh v. Gonzales, 417 F.3d 736, 740 (7th Cir. 2005).

Second, Alvarado relies on a much too narrow view of culpability.  A person who knowingly and voluntarily[8] participates in persecution is sufficiently culpable to be held accountable under the persecutor bar.[9]  To hold otherwise, would create

---

[7] In its decision, the BIA cited Bah, 341 F.d at 351, as consistent with its decision.  See Matter of J.M. Alvarado, 27 I. & N. Dec. 27, 29 (BIA 2017).  Alvarado contends that this reliance was error because Bah is no longer good law in light of Negusie v. Holder, 555 U.S. 511 (2009).  We disagree that Bah is no longer good law.  In Negusie, the Court held its interpretation of the Displaced Person Act does not compel an interpretation of identical language in the persecutor bar.  See id. at 519-20.  Bah did not find its interpretation of the persecutor bar to be compelled. See 341 F.3d at 351.

[8] This decision does not preclude an applicant from raising a well-developed argument that he or she knowingly aided in persecution but did so only because of duress or coercion.  Cf. Negusie, 555 U.S. at 515 (concerning alien who, at the command of superior officers, assisted in persecution but did so only under duress). Alvarado has never made such an argument.

[9] Alvarado contends that decisions of the Second, Fourth, Eighth, and Ninth Circuits all support his view of the persecutor bar.  But the cases cited by Alvarado do not interpret the persecutor bar to require illicit motive to persecute; rather, they are in accordance with this court's decision in Castañeda-Castillo, requiring culpable knowledge.  See Quitanilla v. Holder, 758 F.3d 570 (4th Cir. 2014) (requiring some level of "culpable knowledge"); Parlak v. Holder, 578 F.3d 457, 470 (6th Cir. 2009) (finding petitioner acted "voluntarily and knowingly"); Xu Sheng Gao v. U.S. Atty. Gen., 500 F.3d 93, 103 (2d Cir. 2007) (requiring "culpable knowledge"); Xie v. I.N.S., 434 F.3d 136, 144 (2d Cir. 2006) (culpability established by awareness).  Alvarado also cites several cases that discuss what conduct constitutes "assistance." See Hernandez v. Reno, 258 F.3d 806, 813-15 (8th Cir. 2001); Miranda-Alvarado v. Gonzales, 449 F.3d 915, 925-30.  These cases likewise do not address the issue of motivation.  Alvarado cites no cases supporting the view that the persecutor bar requires a

anomalous results.  For instance, under Alvarado's view of the persecutor bar, an alien applicant who repeatedly and voluntarily bussed innocent Sikhs to a police station, knowing they would be beaten, see Singh, 417 F.3d at 740, would bear no responsibility under the bar -- no matter how brutal the police's conduct -- as long as he did so for a reason other than a personal motive to persecute.

That result would also be contrary to common notions of culpability, which dictate that a person is responsible when she acts knowingly and voluntarily.  Although this is not a criminal case, principles of criminal law illustrate the point.  Motive is generally not an element of a criminal offense unless specifically stated.  See Jerome Hall, General Principles of Criminal Law 88 (2d ed. 1960) ("[H]ardly any part of penal law is more definitely settled than that motive is irrelevant."); James Fitzjames Stephen, 3 A History of the Criminal Law of England 18 (1883) ("[T]he motives of the offender ought never . . . enter into the definition of an offence . . . because they do not affect the public danger or actual mischief of the crimes which they cause."); see also United States v. White, 766 F.2d 22, 24 (1st Cir. 1985) ("[E]vidence of a 'good' motive for violating the law is irrelevant[.]").

_____

finding of illicit motive to persecute on the part of the alien who assists or otherwise participates in the persecution.

- 13 -

Finally, Alvarado contends that reading the persecutor bar to apply to aliens who did not share the illicit motive to persecute contravenes the purpose of the persecutor bar and asylum law generally. To the contrary, applying the persecutor bar to a person who knowingly and voluntarily participated in persecution is a policy choice consistent with a body of law that was designed to shelter the persecuted.

## III.

In sum, the persecutor bar does not require a showing that the alien shared the motive of the persecutors whom he assisted. This interpretation of the bar is consistent with the plain language of the statute, our precedent, the decisions of other courts, and common notions of culpability. Accordingly, the petition for review is denied.

So ordered.