[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15486
Non-Argument Calendar
_____

Agency No. A070-848-642


ENRIQUE MEJIA CHAVEZ,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(July 9, 2014)


Before TJOFLAT, FAY, and EDMONDSON, Circuit Judges.

PER CURIAM:

Enrique Mejia Chavez, a native and citizen of Guatemala, petitions for review of the order of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") denial of his application for asylum under the Immigration and Nationality Act ("INA") § 208(a), 8 U.S.C. § 1158(a), withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), 8 C.F.R. § 208.16(c).   In his petition, Mejia Chavez argues that the agency erred because its determination was not supported by substantial evidence.  Particularly given the deference owed the BIA, we see no reversible error.

"We review only the [BIA's] decision, except to the extent that it expressly adopts the IJ's opinion.  Insofar as the [BIA] adopts the IJ's reasoning, we will review the IJ's decision as well."  *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001) (citation omitted).  We may only review those issues ruled upon by the BIA.  *See Donawa v. U.S. Att'y Gen.*, 735 F.3d 1275, 1279 (11th Cir. 2013).  Factual determinations are reviewed under the "highly deferential substantial evidence test," which requires us to "view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of

2

that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (*en banc*).  We "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole."  *D-Muhumed v. U.S. Att'y Gen.*, 388 F.3d 814, 818 (11th Cir. 2004) .  "To reverse the . . . fact findings, we must find that the record not only supports reversal, but compels it."  *Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1287 (11th Cir. 2003).  We review the IJ's and BIA's legal conclusions *de novo*.  *Kazemzadeh v. U.S. Att'y Gen.,* 577 F.3d 1341, 1350 (11th Cir. 2009).

An alien who arrives in or is present in the United States may apply for asylum.  INA § 208(a)(1), 8 U.S.C. § 1158(a)(1).  The Attorney General or the Secretary of the Department of Homeland Security has discretion to grant asylum if the alien meets the INA's definition of a "refugee."  INA § 208(b)(1), 8 U.S.C. § 1158(b)(1).  A "refugee" is:

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A).  The asylum applicant carries the burden of proving statutory "refugee" status.  8 C.F.R. § 208.13(a); *Al Najjar*, 257 F.3d at 1284.  To establish eligibility, the alien must, with specific and credible

3

evidence, establish (1) past persecution on account of a statutorily listed factor or (2) a well-founded fear that the statutorily listed factor will cause future persecution. 8 C.F.R. § 208.13(b); *Al Najjar*, 257 F.3d at 1287.

"[P]ersecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and . . . mere harassment does not amount to persecution." *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1231 (11th Cir. 2005) (quotations and alteration omitted). Moreover, the persecution must be personal to the applicant --"threatening acts or harm against other family members does not constitute or imply persecution of the petitioner where there has been no threat or harm directed against the petitioner." *Rodriguez v. U.S. Att'y Gen.,* 735 F.3d 1302, 1308-09 (11th Cir. 2013); *see also In re A-K-*, 24 I. & N. Dec. 275, 278 (BIA 2007) (persecution must be "tied to the applicant personally").

An applicant must also establish a nexus between the persecution and a ground listed in the statute. INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A) (defining a "refugee" as a person who cannot or will not return to their country because of past persecution or a well-founded fear of future persecution "on account of" a protected ground). The applicant must demonstrate that one of the enumerated grounds "was or will be at least one central reason" for the persecution. INA § 208(b)(1)(B)(i), 8 U.S.C. § 1158(b)(1)(B)(i).

4

The statutory grounds for asylum specifically include "membership in a particular social group, or [a] political opinion." INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). "Persecution on account of political opinion is persecution on account of the *victim's* political opinion, not the persecutor's." *Sanchez v. U.S. Att'y Gen.*, 392 F.3d 434, 437-38 (11th Cir. 2004) (emphasis in original) (alterations omitted). The key question is whether the persecutor is acting *because of* the applicant's political opinion. *See id.* at 438. We have said that "evidence that either is consistent with acts of private violence or the petitioner's failure to cooperate with guerillas, or that merely shows that a person has been the victim of criminal activity, does not constitute evidence of persecution based on a statutorily protected ground." *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1258 (11th Cir. 2006); *see also Sanchez,* 392 F.3d at 438 (petitioner failed to establish a nexus between her alleged political opinion and the guerillas' alleged persecution when she established merely that the guerillas harassed her because of her failure to cooperate).

Congress has not defined what constitutes a "particular social group" under the INA; and we must defer to the BIA's reasonable interpretation of that term, pursuant to *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *Castillo-Arias v. U.S. Att'y Gen.*, 446 F.3d 1190, 1195-96 (11th Cir. 2006). In *Castillo-Arias*, we approved the BIA's

5

definition of a "particular social group" as a group of persons who "share a common, immutable characteristic . . . such as sex, color, or kinship ties, or in some circumstances . . . a shared past experience such as former military leadership or land ownership." *Id.* at 1193, 1196-97 (citing *Matter of Acosta*, 19 I. & N. Dec. 211, 233 (BIA 1985), *overruled on other grounds by Matter of Mogharrabi*, 19 I. & N. Dec. 439, 447 (BIA 1987)). "[T]his characteristic must be one that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." *Id.* at 1193 (quotations omitted). Reasoning that membership in a particular social group should not be defined so broadly that it becomes "a 'catch-all' for all persons alleging persecution who do not fit elsewhere," we affirmed the BIA's determination that noncriminal informants working against the Colombian drug cartels are not a particular social group. *See id.* at 1198 ("The risk of persecution alone does not create a particular social group within the meaning of the INA, as virtually the entire population of Colombia is a potential subject of persecution by the cartel.").

To qualify as a "particular social group," a group must (1) "share a common, immutable characteristic," (2) not be defined by the risk of persecution alone, and (3) not be "too numerous or inchoate." *Rodriguez,* 735 F.3d at 1310. In addition, a particular social group must have "social visibility" (which the BIA recently

6

renamed "social distinction"), which requires a group to be "socially distinct within the society in question," that is, it must be perceived as a distinct group by society. *See Matter of W-G-R-*, 26 I. & N. Dec. 208, 212 (BIA 2014); *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237, 240 (BIA 2014). Mere resistance to a violent group does not confer social distinction. *See Matter of E-A-G-*, 24 I. & N. Dec. 591, 594-95 (BIA 2008) (holding that the proposed "social group" of people "who resist joining gangs [has] not been shown to be part of a socially visible group within Honduran society").

To establish a well-founded fear of future persecution, the applicant must show either (1) past persecution that creates a presumption of a "well-founded fear" of future persecution, or (2) that there is a "reasonable possibility" of suffering persecution if he returns to his home country. 8 C.F.R. § 208.13(b)(1), (2). If the applicant is entitled to the presumption based on past persecution, that presumption may be rebutted if, for example, a fundamental change of circumstances has happened such that the applicant would no longer have a well-founded fear of persecution in his or her country. *Id.* § 208.13(b)(1)(i)(A). The applicant must demonstrate a well-founded fear of future persecution that is "subjectively genuine and objectively reasonable." *Al Najjar*, 257 F.3d at 1289. "The subjective component is generally satisfied by the applicant's credible testimony that he or she genuinely fears persecution[,]" and "[i]n most cases, the

objective prong can be fulfilled either by establishing past persecution or that he or she has a good reason to fear future persecution." *Id.* (quotations omitted).  The applicant must present "specific, detailed facts showing a good reason to fear that he or she will be *singled out* for persecution on account of [the statutorily protected factor]." *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1286 (11th Cir. 2005) (quotation omitted) (emphasis in original).

To qualify for withholding of removal, the applicant bears the burden of showing that his life or freedom would be threatened in the proposed country of removal: threatened on account of a protected ground.  *See* INA § 241(b)(3)(A), 8 U.S.C. §1231(b)(3)(A); 8 C.F.R. § 208.16(b).  The applicant meets this burden by showing that it is "more likely than not" he or she will be persecuted or tortured upon being returned to their country.  *Sepulveda,* 401 F.3d at 1232.  This standard is a more stringent one than the one required for asylum eligibility; therefore, if an applicant is unable to meet the "well-founded fear" standard for asylum, he generally is unable to qualify for withholding of removal.  *See Kazemzadeh*, 577 F.3d at 1352.

To qualify for protection under CAT, the applicant bears the burden of showing that it is more likely than not that he would be tortured if returned to the proposed country of removal.  8 C.F.R. § 208.16(c)(2).  To obtain CAT relief, the applicant must demonstrate that the torture would be inflicted by the government

or that the government would be aware of the torture and allow it to happen.  *See Reyes-Sanchez v. U.S. Att'y Gen.*, 369 F.3d 1239, 1242 (11th Cir. 2004).

Substantial evidence supports the denial of Mejia Chavez's asylum, withholding of removal, and CAT claims.  First, the record does not compel the finding that Mejia Chavez was personally persecuted on account of a protected ground.  Mejia Chavez did not demonstrate a connection between his political opinion and the guerillas' mistreatment of him and his family.  *See Ruiz,* 440 F.3d at 1258.  Furthermore, the agency's determining that the "social group" proposed by Mejia Chavez -- people affiliated with the Guatemalan army and government -- is no "particular social group" under the meaning of the INA is free of error:  the purported "social group" is both too inchoate, numerous, and not socially distinctive.   Second, substantial evidence supports the agency's determination that Mejia Chavez's fear of persecution upon return to Guatemala is not objectively reasonable because of the passage of time and the changed circumstances -- for example, the Peace Accords -- in Guatemala; he therefore cannot show a well-founded fear of future persecution.

Because Mejia Chavez failed to carry his burden for asylum, he necessarily failed to carry the higher burden required to qualify for withholding of removal.  In addition, nothing evidences torture of Mejia Chavez or evidences that the government of Guatemala would participate or acquiesce in such torture; so the

record fails to compel reversal of the agency's determination that Mejia Chavez was unentitled to CAT relief.

**PETITION DENIED.**