# In re A-K-, Respondent

*Decided September 5, 2007*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

An alien may not establish eligibility for asylum or withholding of removal based solely on fear that his or her daughter will be harmed by being forced to undergo female genital mutilation upon returning to the alien's home country.

FOR RESPONDENT:  H. Todd Nesom, Esquire, Oakdale, Louisiana

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Lorraine L. Griffin, Assistant Chief Counsel

BEFORE:   Board Panel:  COLE, FILPPU, and PAULEY, Board Members.

PAULEY, Board Member:

In a decision dated October 26, 2006, an Immigration Judge found the respondent removable but granted his request for withholding of removal pursuant to section 241(b)(3)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1231(b)(3)(A) (2000).  Because he granted that application, the Immigration Judge denied as moot the respondent's application for protection under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46. 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988) ("Convention Against Torture").  The Department of Homeland Security ("DHS") has filed a timely appeal of that decision, contesting the Immigration Judge's grant of withholding of removal under section 241(b)(3)(A) of the Act.  The appeal will be sustained, the decision of the Immigration Judge will be vacated, and the respondent will be ordered removed from the United States.

The respondent is a native and citizen of Senegal who sought relief from removal based on his claim that his two minor United States citizen daughters would be subjected to female genital mutilation ("FGM") in his home country. The Immigration Judge determined that the respondent was entitled to withholding of removal under section 241(b)(3)(A) of the Act, primarily based on his finding that the respondent's daughters would more likely than not be

forced to undergo FGM in the future in Senegal. We conclude that this determination is both factually flawed and legally unsound.

It does not appear that the United States Court of Appeals for the Fifth Circuit, in whose jurisdiction this matter arises, has published any case law addressing the issue whether an alien parent can establish eligibility for asylum or withholding of removal based on his fear that his child will be persecuted. However, we observe that two sister circuits have recently published cases addressing this issue. While these cases, which involved differing factual scenarios, reached opposite results, neither case holds, or even suggests, that an applicant is eligible for asylum or withholding of removal on the basis of feared future harm to his United States citizen child.

In *Oforji v. Ashcroft*, 354 F.3d 609 (7th Cir. 2003), the Seventh Circuit determined that an alien parent, a citizen of Nigeria who had no legal standing to remain in the United States, could not establish her own claim for asylum based on potential persecution to her United States citizen children, who had the right to remain in the United States in the event of the alien's deportation, even where her children allegedly faced FGM if they returned with her to Nigeria. Of particular note, the Seventh Circuit distinguished that case from its prior decision in *Salameda v. INS*, 70 F.3d 447 (7th Cir. 1995), in which the court directed us to consider hardship to an alien's noncitizen child who would be "constructively deported" along with his parents. The Seventh Circuit factually distinguished the situation presented in *Oforji* from that in *Salameda*, noting that in *Oforji* the alien's two female children were both United States citizens and therefore had the legal right to remain in this country in the event of the alien's deportation, unlike the child in *Salameda*. *Oforji v. Ashcroft*, *supra*, at 616. Moreover, the court observed that *Salameda* involved a situation where both parents of the child were being deported, whereas the alien in *Oforji* failed to establish that her husband would be deported. *Id.*

In *Abay v. Ashcroft*, 368 F.3d 634 (6th Cir. 2004), the Sixth Circuit determined that an alien parent, a citizen of Ethiopia, established her own reasonable fear of future persecution based on her fear that her daughter, who was also an Ethiopian citizen with no legal right to remain in the United States, would be forced to undergo FGM if they were to return to Ethiopia. The Sixth Circuit embraced a "governing principle in favor of refugee status in cases where a parent and protector is faced with exposing her child to the clear risk of being subjected against her will to a practice that is a form of physical torture causing grave and permanent harm." *Abay v. Ashcroft*, *supra*, at 642.

We observe that the Fourth Circuit has explicitly declined to follow *Abay v. Ashcroft*, *supra*, insofar as it held that a parent applicant could establish eligibility for asylum based on the incidental psychological suffering of the parent occasioned by harm to her child. *Niang v. Gonzales*, 492 F.3d 505 (4th Cir. 2007). Noting that "*Abay* is the only federal decision permitting

a parent to seek relief, in her own right, based solely on the psychological suffering she will endure if her daughter will be subjected to FGM upon removal," the Fourth Circuit concluded that "because 'persecution' cannot be based on a fear of psychological harm alone, Niang's withholding claim fails as a matter of law because it focuses solely on the psychological harm she claims she will suffer if her daughter accompanies her to Senegal and is there subjected to FGM." *Niang v. Gonzales*, *supra*, at 512. As discussed below, we find that a similar result is required in the instant case.

Factually, we find that this case is nearly identical to *Oforji v. Ashcroft*, *supra*, as there is no dispute that the two minor children in question are both United States citizens and have a legal right to remain in this country. Furthermore, as in *Oforji*, only one parent is in removal proceedings. By contrast, *Abay v. Ashcroft*, *supra*, is factually distinguishable, as that case involved a situation where the daughter of the alien in removal proceedings had no lawful status in the United States and could not legally remain in the country in the event of her mother's removal in order to avoid persecution. Thus, unlike the situation in *Abay*, where the alien parent was "faced with exposing her child to the clear risk" of FGM, *id.* at 642, the children in the instant matter could avoid this risk altogether by remaining in the United States, which they are legally entitled to do, either by staying with the parent who is not currently in removal proceedings, or through the appointment of a guardian to ensure their welfare until such time as they reach majority. Finally, in *Abay*, the Sixth Circuit determined that the practice of FGM in Ethiopia was "'nearly universal,'" and thus that there was little doubt that the respondent's daughters would undergo the procedure if they accompanied their mother to that country. *Id.* at 636, 642 (quoting Department of State reports).

By contrast, the State Department's 2005 country report on human rights practices in Senegal indicates that FGM is common only in certain areas of the country. *See* Bureau of Democracy, Human Rights, and Labor, U.S. Dep't of State, *Senegal Country Reports on Human Rights Practices–2005* (Mar. 8, 2006), *available at* http://www.state.gov/g/drl/rls/hrrpt/2005/61589.htm. A State Department asylum profile of Senegal also indicates that FGM is not practiced at all by the country's largest social group. *See* Bureau of Democracy, Human Rights, and Labor, U.S. Dep't of State, *Senegal Profile of Asylum Claims and Country Conditions* 9 (June 1998). Accordingly, it appears that even if the respondent's children were to accompany him to Senegal, they could avoid FGM by relocating to an area of comparative safety. 8 C.F.R. § 1208.16(b)(1)(i)(B) (2007).

Moreover, even if the respondent's children went with him to Senegal and faced a risk of FGM, we would decline to find that he could establish

eligibility for withholding of removal under the circumstances presented in this case. Various circuit courts that have addressed an applicant's claim of future persecution based on harm to his family members have generally indicated that acts of persecution against the family members do not serve to establish a risk of future persecution to the applicant himself, absent a pattern of persecution tied to the applicant personally. *See, e.g.*, *Akhtar v. Gonzales*, 406 F.3d 399 (6th Cir. 2005); *Nyonzele v. INS*, 83 F.3d 975 (8th Cir. 1996); *Arriaga-Barrientos v. U.S. INS*, 937 F.2d 411 (9th Cir. 1991); *see also Tamas-Mercea v. Reno*, 222 F.3d 417, 424 (7th Cir. 2000) (rejecting an alien's claim for asylum based solely on harm to family members). In particular, courts have found that an applicant can establish a well-founded fear of persecution in cases where he faces a reasonable possibility of persecution based on imputed political opinion where his family was persecuted on the basis of *their* political beliefs or activities, and it is reasonable to believe that the applicant himself would falsely be perceived to share his family's beliefs upon returning to his home country. *See, e.g.*, *Makonnen v. INS*, 44 F.3d 1378 (8th Cir. 1995); *Ramirez Rivas v. INS*, 899 F.2d 864 (9th Cir. 1990). However, in this case, there is no such risk to the applicant.

We recognize that there may also be cases where a person persecutes someone close to an applicant, such as a spouse, parent, child or other relative, with the intended purpose of causing emotional harm to the applicant, but does not directly harm the applicant himself. However, in such a case, the persecution would not be "derivative," as the applicant himself would be the target of the emotional persecution that arises from physical harm to a loved one. Automatically treating harm to a family member as being persecution to others within the family is inconsistent with the derivative asylum provisions, as it would obviate the need for these provisions in many respects.

Thus, allowing an applicant to obtain asylum or withholding of removal through persecution to his child would require granting relief outside the statutory asylum scheme established by Congress.[1] In the context of asylum claims, the Act contemplates that a spouse or child of an alien who is granted asylum based on persecution may, if not otherwise eligible for asylum himself,

---

[1] We recognize that in *Tchoukhrova v. Gonzales*, 404 F.3d 1181 (9th Cir. 2005), the Ninth Circuit held that the harm suffered by the disabled child of an asylum applicant could be imputed to the applicant, the child's mother, in support of her application. However, the United States Supreme Court recently vacated this judgment and remanded the matter to the Ninth Circuit for further consideration in light of its decision in *Gonzales v. Thomas*, 547 U.S. 183 (2006) (finding that it was improper for the Ninth Circuit to determine that an alien's family constituted a "particular social group" for asylum purposes, as the proper course was to remand this issue to the Board for an initial agency determination). *Gonzales v. Tchoukhrova*, 127 S. Ct. 57 (2006).

be granted the same status as the alien if accompanying, or following to join, the alien who has been granted asylum. Section 208(b)(3)(A) of the Act, 8 U.S.C. § 1158(b)(3)(A) (Supp. IV 2004). However, the converse is not true; there is no statutory basis for a grant of derivative asylum status to a parent based on the grant of asylum to his child. Furthermore, in situations contemplated by section 208(b)(3)(A) of the Act, the principal applicant must first establish entitlement to asylum in his own right, following which the spouse or child of the principal applicant may then be afforded asylum status through him. In the matter at hand, the children who are alleged to face persecution, and through whom the respondent in this matter seeks to derive relief, are not applicants for asylum, as they are United States citizens with a legal right to remain in this country.

Furthermore, while section 208(b)(3)(A) of the Act provides for derivative asylum in certain circumstances, the Act does not permit derivative withholding of removal under any circumstances. In this regard, we agree with the conclusion reached by the Fourth Circuit in *Niang v. Gonzales*, *supra*, as to the issue of derivative withholding of removal. In that decision, the Fourth Circuit found the following:

> Where, as here, an alien is not eligible for relief under § 1229b [pertaining to cancellation of removal], there is simply no statutory or regulatory authority for her to claim withholding of removal based on threatened hardship to her U.S. citizen minor daughter. As Congress has not provided for such a derivative withholding claim, we will not judicially amend the statute to create one.

*Id.* at 512 (footnote omitted). Accordingly, we disagree with the Immigration Judge's conclusion that the respondent has established eligibility for withholding of removal based on his fear that his two United States citizen children would be forced to undergo FGM in Senegal.

We also reject the Immigration Judge's alternative grant of withholding of removal to the respondent on "humanitarian grounds" based on the severity of the potential harm to his children. Section 241(b)(3)(A) of the Act does not contain a discretionary component and does not allow an Immigration Judge to award "relief" for humanitarian reasons if a probability of qualifying persecution to the applicant is not shown.

The Immigration Judge also found that there was evidence that the respondent himself would be subject to persecution for his opposition to FGM if he were returned to Senegal. The Immigration Judge noted that both the respondent and his wife had testified that they opposed FGM, and he found that "members of respondent's family and respondent's wife's family, as well as other members of the Fulani tribe, would take whatever steps were necessary to insure that respondent's two young U.S. citizen daughters were subjected to the FGM procedure if returned to Senegal." In this regard, the

respondent argues on appeal that he should be found to be a member of a particular social group, which includes fathers of daughters who have not been subjected to FGM, but who nonetheless oppose the practice. We decline to find such a particular social group in this case.

First, while the respondent may be subject to harassment on account of his opposition to FGM, we find that he has not shown that it is more likely than not that his life or freedom would be threatened on account of his opposition to this practice, particularly in light of his repeated and specific testimony that he has no fear of any persecution to himself if he were to return to Senegal. Furthermore, the statement of the Immigration Judge quoted above is highly speculative and assumes that the respondent's two United States citizen children would return with the respondent to Senegal, which is factually questionable if the respondent truly believes that they would definitely be tortured there, and which is in no way legally required of the children.

Similarly, the respondent argues on appeal that he would be persecuted in Senegal on account of his political opinion, i.e., his opposition to the practice of FGM. However, we again find no evidence to indicate that the respondent himself would be subject to any substantial harm (as opposed to harm to his children) on account of his personal opposition to this tribal practice. The respondent testified that his family and tribe are interested in performing FGM on his daughters and appear to be concerned only in what happens to these children, not what their father feels about the practice. For example, he stated that tribal officials "won't beat" him for opposing FGM for his daughters but might "humiliate" him for his views. In addition, it is not apparent that FGM is a practice which the Government of Senegal is unable or unwilling to end. We note in this regard the evidence indicating that the Government of Senegal has made the performance of FGM a criminal offense carrying a lengthy term of imprisonment, has actively prosecuted those caught engaging in the practice, and is vigorously fighting to end it.

Moreover, we find that a remand for the Immigration Judge to consider the respondent's application for protection under the Convention Against Torture is not required in this case. There is no legal basis for a derivative grant of such protection where, as here, the respondent has not alleged any past torture, or fear of future torture, to himself. *See Oforji v. Ashcroft, supra.* Accordingly, the respondent has not met his burden of establishing that it is more likely than not that he will be subjected in Senegal to torture that is "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1) (2007); *see also Matter of M-B-A-*, 23 I&N Dec. 474 (BIA 2002); *Matter of J-E-*, 23 I&N Dec. 291 (BIA 2002); *Matter of Y-L-, A-G-, & R-S-R-*, 23 I&N Dec. 270 (A.G. 2002); 8 C.F.R. §§ 1208.16(c), 1208.18(a)(2)-(5).

On appeal, the respondent also seeks a remand of the record to allow him to apply for asylum. The regulations provide that the Immigration Judge may set and extend time limits for the filing of applications. 8 C.F.R. § 1003.31(c) (2007). At the time of the respondent's May 18, 2006, Master Calendar hearing, the Immigration Judge gave him additional time to apply for all forms of relief for which he was eligible and advised him that any application that was not received at the time of the next hearing would be considered abandoned. However, at the time of the next hearing, which was held on July 5, 2006, counsel for the respondent indicated that he was only applying for withholding of removal under section 241(b)(3) of the Act and protection pursuant to the Convention Against Torture.[2] According to the regulations, "[i]f an application or document is not filed within the time set by the Immigration judge, the opportunity to file that application or document shall be deemed waived." 8 C.F.R. § 1003.31(c). We therefore find no basis for a remand for consideration of the respondent's asylum claim in this matter.

We conclude that the Immigration Judge erred in granting the respondent's application for withholding of removal pursuant to section 241(b)(3)(A) of the Act. Accordingly, we will sustain the DHS's appeal, vacate the Immigration Judge's decision, and order the respondent removed.

**ORDER:** The appeal of the Department of Homeland Security is sustained.

**FURTHER ORDER:** The order of the Immigration Judge granting withholding of removal is vacated.

**FURTHER ORDER:** The respondent is ordered removed from the United States to Senegal.

---

[2] The respondent also filed a separate application for cancellation of removal, which he subsequently withdrew after conceding that he was ineligible for this form of relief from removal.