FILED
United States Court of Appeals
Tenth Circuit

March 27, 2014

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

BILLO FALL; MADIAMA MBAYE,

Petitioners,

v.

ERIC H. HOLDER, JR.,
United States Attorney General,

Respondent.

No. 13-9560
(Petition for Review)

ORDER AND JUDGMENT[*]

Before **KELLY**, **ANDERSON**, and **MATHESON**, Circuit Judges.

Billo Fall and her husband, Madiama Mbaye, natives and citizens of Senegal,

petition for review of a final order of removal from the Board of Immigration

Appeals (BIA). Because petitioners' challenge to the agency's denial of their

untimely asylum application does not raise a constitutional claim or question of law,

we lack jurisdiction to review it and dismiss that portion of the petition. *Ferry v.*

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

*Gonzales*, 457 F.3d 1117, 1130 (10th Cir. 2006); 8 U.S.C. § 1158(a)(3). We do, however, have jurisdiction to consider the agency's denial of restriction on removal, 8 U.S.C. § 1252(a), and deny the remainder of the petition.

### Background

Ms. Fall and her husband were admitted to the United States on nonimmigrant visas in 2001 and 2000, respectively, but overstayed. In 2007, the government initiated removal proceedings. Petitioners conceded removability and filed applications for asylum, restriction on removal, and relief under the Convention Against Torture (CAT). Petitioners claimed eligibility on account of their political opinion and membership in a particular social group.

In response to whether she or anyone closely associated with her had experienced past harm, Ms. Fall indicated on her application that her aunt was a victim of female genital mutilation (FGM). She also stated that she feared returning to Senegal because she is afraid that she and her daughters will be subjected to the procedure. Ms. Fall's husband sought derivative asylum relief, but filed a separate application for restriction on removal and CAT protection. In his application, Mr. Mbaye stated that his wife was tortured in Senegal because she refused to undergo FGM. He also stated that he fears returning to Senegal because he will be beaten and tortured for not allowing his wife and daughters to be circumcised.

In a hearing before an Immigration Judge (IJ), Ms. Fall testified that she is from a tribe that practices FGM. She said that in 1992 her aunts and uncles beat her,

and that the beating intensified when she voiced her opposition to FGM. She submitted photos of scars she claims are from that attack. She testified that she suffered other beatings, but that the 1992 attack was the most severe. Ms. Fall's husband and sister also testified.

At the end of the hearing, the IJ denied petitioners' asylum application as untimely, found their testimony incredible, and denied their requests for restriction on removal and CAT protection. In evaluating Ms. Fall's testimony, the IJ focused on her failure to mention the 1992 attack in her application. He found her excuse for the omission—that she was ashamed—unpersuasive; specifically, he could not square Ms. Fall's ability to mention her fear of FGM, but inability to mention a prior FGM-related beating. The IJ noted that Ms. Fall did not produce any evidence corroborating the cause of her scars and that her testimony about the severity of the 1992 beating conflicted with her sister's. Consequently, the IJ concluded that the record failed to establish that Ms. Fall suffered past persecution. In rejecting Ms. Fall's fear of future persecution, the IJ observed, among other things, that FGM is criminalized in Senegal, it is on the decline, and it is not widespread in urban areas such as Dakar, where Ms. Fall has roots. Citing *Matter of A-K-*, 24 I. & N. Dec. 275, 278-79 (BIA 2007), the IJ also rejected petitioners' claim to restriction on removal based on their fear that if they return to Senegal, their daughters may be subjected to

FGM. Admin. R. at 52.[1]  The BIA upheld the IJ's determination that petitioners were statutorily ineligible for asylum because their asylum application was untimely filed, upheld the IJ's denial of restriction on removal, found petitioners' CAT claim waived, and dismissed petitioners' appeal.

In this court, petitioners challenge the BIA's asylum and restriction on removal rulings. As previously noted, however, we lack jurisdiction to review the agency's denial of asylum. Further, petitioners have apparently abandoned any claim that Mr. Mbaye is entitled to restriction on removal. Their opening brief takes issue with the BIA's denial of *Ms. Fall's* request for restriction on removal *only*, challenging the BIA's determinations that she failed to (1) testify credibly, (2) establish past persecution, or (3) demonstrate a clear probability of future persecution.

**Discussion**

In this case, it is the BIA's brief, single-member decision that we review. *Rivera-Barrientos v. Holder*, 666 F.3d 641, 645 (10th Cir. 2012). We "will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA in its affirmance." *Id.* (internal quotation marks omitted). "However, when seeking to

---

[1]  We note that petitioners have waived any challenge to that ruling by failing to exhaust it before the BIA or raise it in their opening brief in this court. *See Sidabutar v. Gonzales*, 503 F.3d 1116, 1118 (10th Cir. 2007) ("[W]e generally assert jurisdiction only over those arguments that a petitioner properly presents to the BIA."); *Krastev v. INS*, 292 F.3d 1268, 1280 (10th Cir. 2002) ("Issues not raised on appeal are deemed to be waived.").

understand the grounds provided by the BIA, we are not precluded from consulting the IJ's more complete explanation of those same grounds." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006).

"We review the BIA's legal conclusions de novo," *Rivera-Barrientos,* 666 F.3d at 645, and its factual findings, including credibility determinations, for substantial evidence, *Uanreroro*, 443 F.3d at 1204, 1205. "In this circuit, the ultimate determination whether an alien has demonstrated persecution is a question of fact" also subject to the substantial-evidence standard. *Zhi Wei Pang v. Holder*, 665 F.3d 1226, 1231 (10th Cir. 2012) (internal quotation marks omitted). Under that standard, "[t]he BIA's findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." *Rivera-Barrientos*, 666 F.3d at 645 (internal quotation marks omitted).

Our review of a corroboration finding is circumscribed by 8 U.S.C. § 1252(b)(4), which states that an adjudicator's determination shall not be reversed by a court "unless the court finds . . . that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable." *See also* 8 U.S.C. § 1158(b)(1)(B)(ii) ("Where the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence."); *id.* § 1231(b)(3)(C) (applying § 1158(b)(1)(B)(ii)'s standards to restriction on removal).

- 5 -

"To obtain restriction on removal, the alien must demonstrate that her 'life or freedom would be threatened in [the proposed country of removal] because of [her] race, religion, nationality, membership in a particular social group, or political opinion.'" *Tulengkey v. Gonzales*, 425 F.3d 1277, 1280 (10th Cir. 2005) (quoting 8 U.S.C. § 1231(b)(3)(A)).

> An alien may create a rebuttable presumption of eligibility for restriction on removal by either (1) demonstrating past persecution in the proposed country of removal on account of one of the protected grounds; or (2) showing that it is more likely than not that the alien would be subject to persecution on one of the specified grounds upon returning to the proposed country of removal.

*Sidabutar*, 503 F.3d at 1123-24 (citations and internal quotation marks omitted). "Persecution is the infliction of suffering or harm upon those who differ . . . in a way regarded as offensive and requires more than just restrictions or threats to life and liberty." *Zhi Wei Pang*, 665 F.3d at 1231 (internal quotation marks omitted).

### Credibility and Past Persecution

Petitioners contend that the BIA erred in upholding the IJ's adverse credibility finding and in concluding that Ms. Fall failed to demonstrate past persecution. We disagree.

The agency gave "specific, cogent reasons for disbelieving" Ms. Fall's testimony. *Uanreroro*, 443 F.3d at 1204 (internal quotation marks omitted). The BIA highlighted the evidence the IJ cited in support of his adverse-credibility finding; namely, that Ms. Fall testified she was beaten for resisting FGM but omitted any mention the beatings in her application. The BIA agreed with the IJ that

- 6 -

Ms. Fall's explanation for not mentioning the beatings was unpersuasive. The BIA noted that although Ms. Fall submitted photos of scars, she did not provide any medical testimony or other corroborative material linking the scars to the 1992 beating. And the BIA stated that Ms. Fall's testimony about the severity of the 1992 beating was inconsistent with her sister's statement that Ms. Fall's injuries resulted in only "'a little bit' of bleeding." Admin. R. at 5.

Omissions, implausible explanations, and inconsistent testimony are proper credibility factors. *See Ismaiel v. Mukasey*, 516 F.3d 1198, 1205-06 (10th Cir. 2008) (observing that agency may discredit an applicant's testimony about significant incidents where applicant did not disclose that information at earlier stages in the proceedings); *Elzour v. Ashcroft*, 378 F.3d 1143, 1152 (10th Cir. 2004) (explaining that an "adverse credibility determination may" stem from "inconsistencies in the witness' testimony, lack of sufficient detail, or implausibility"). Having reviewed the record in accordance with the prescribed deferential standard of review, we cannot conclude that the agency's credibility finding was substantially unreasonable or that any reasonable adjudicator would be compelled to conclude that Ms. Fall must be considered a credible witness. Nor would any reasonable adjudicator be compelled to conclude that corroborating evidence was unavailable. Indeed, petitioners make no argument concerning the unavailability of corroborating evidence under 8 U.S.C. § 1252(b)(4). To prevail on their arguments to the contrary, petitioners would

require us to reweigh the evidence, which we do not do. *See Yuk v. Ashcroft*, 355 F.3d 1222, 1236 (10th Cir. 2004).[2]

Moreover, we reject petitioners' argument that the BIA erred in denying Ms. Fall's claim of past persecution. Our review confirms that substantial evidence supports the agency's determination on this point and that no reasonable adjudicator would be compelled to conclude otherwise.

### *Future Persecution*

Petitioners next assert that the BIA erred in upholding the IJ's determination that Ms. Fall failed to establish that it is more likely than not that she will be persecuted upon her return to Senegal. This argument is also unavailing.

In upholding the IJ's determination, the BIA, among other things, noted that Ms. Fall's husband and family are opposed to FGM, none of Ms. Fall's sisters has been circumcised, and Ms. Fall's "11 year old daughter, who has been living with a relative in Senegal since she was born, has not been subjected to the procedure" either. Admin. R. at 5 (citing *Ritonga v. Holder*, 633 F.3d 971, 977 (10th Cir. 2011) (noting that continued presence of family in native country without any harm

---

[2]     We lack jurisdiction to consider petitioners' unexhausted (and dubious) contentions that (1) there was no reason for Ms. Fall's beatings to be included in her application, (2) it might not be obvious to an applicant that she must provide all information on her application, which contains limited space, (3) corroborating evidence would have repeated Ms. Fall's allegations, and (4) Ms. Fall's sister's testimony obviated the need for further corroboration. *See Sidabutar*, 503 F.3d at 1118 (stating that court of appeals generally does not assert jurisdiction over unexhausted claims).

"undercuts . . . asserted fear of persecution")).  Additionally, the BIA observed that the 2010 State Department Country Report states that "only 28% of girls in Senegal have undergone FGM," that the prison sentence for FGM is "6 months to 5 years," and that "the government prosecute[s] violators of the law."  *Id.* at 5-6.  Thus, the BIA concluded that "respondents have not demonstrated that they could not seek protection from the government."  *Id.* at 6 (citing *Rivera-Barrientos*, 666 F.3d at 646 (observing that harm must be "committed by the government or forces the government is either unable or unwilling to control" (internal quotation marks omitted)).

Our review confirms that substantial evidence supports the agency's determination that Ms. Fall failed to demonstrate a clear probability of future persecution and that no reasonable adjudicator would be compelled to conclude otherwise.  Again, petitioners' contrary arguments would require us to reweigh the evidence, which we do not do.  *See Yuk*, 355 F.3d at 1236.

## Conclusion

For the foregoing reasons, the petition for review is dismissed in part and denied in part.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge