NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3684
_____

LESBIA NUÑEZ-BAQUEDANO,
                                                    Petitioner
                              v.

THE ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,
                                                    Respondent
_____

On Petition for Review from the Board of Immigration Appeals
BIA No. A205-879-689
Immigration Judge: Honorable Steven Morley
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
July 10, 2017

Before: SMITH, *Chief Judge,* FUENTES, *Circuit Judge*, and STARK,[†] *Chief District Judge*

(Opinion Filed: July 21, 2017)
_____

OPINION*

_____

[†] Honorable Leonard P. Stark, Chief Judge of the United States District Court for the District of Delaware, sitting by designation.
* This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

SMITH, *Chief Judge*.

Lesbia Nuñez-Baquedano petitions for review of a decision by the Board of Immigration Appeals ("BIA") dated August 23, 2016, which affirmed and adopted a decision by the Immigration Judge ("IJ") that denied asylum and withholding of removal and deemed Nuñez-Baquedano to have waived review of the IJ's decision to deny protection under the Convention Against Torture ("CAT"). For the reasons that follow, we will deny the petition in part and grant it in part.

I.

Nuñez-Baquedano is a native and citizen of Honduras who entered the United States in March 2013.[1] She was served with a notice to appear in April 2013. She conceded removability and sought asylum, withholding of removal, and CAT protection.

At a hearing before the IJ in Philadelphia, Pennsylvania, Nuñez-Baquedano testified that, while in Honduras, she and her husband worked for a trucking association. In 2009, she and her husband conducted an internal audit and discovered certain anomalies, which they ultimately attributed to a theft by three other members of the trucking association. Nuñez-Baquedano and her husband attempted to report the theft to the trucking association's board of directors and to

---

[1] Nuñez-Baquedano's husband entered the United States illegally in 2014 and was separately placed in removal proceedings in Texas. Her two teenage children continue to reside in Honduras.

the police, but the evidence of their findings was stolen from her husband's car before they could do so. According to Nuñez-Baquedano, "[s]ince we lacked the actual files or the evidence, the police did nothing." J.A. vol. II at 25.[2]

After accusing the three association members, Nuñez-Baquedano and her husband resigned and began to do business on their own. She and her family thereafter experienced three serious incidents.

First, in 2011, Nuñez-Baquedano's oldest son was hit by a car while walking along a road; the driver fled the scene. Her son suffered serious injuries, including multiple fractures to his leg that required surgery and a ten-day hospitalization. Nuñez-Baquedano testified that she did not witness this incident, but others told her that "the driver actually aimed the car at [her] son." J.A. vol. II at 26. She attributes the incident to the three members of the trucking association whom she had accused of theft. According to the police report of the incident, the mother of the driver later had an attorney contact Nuñez-Baquedano's husband to offer a settlement but, because the amount was too low to cover the medical expenses, he refused.

Second, in 2012, Nuñez-Baquedano's husband, while driving a truck, witnessed "narcotraffickers" shooting and killing the occupants of the vehicle

---

[2] J.A. refers to the Joint Appendix filed in this matter. Because the page numbering re-starts with each volume, each citation to the J.A. refers to both a volume and page number.

immediately in front of him. J.A. vol. II at 28–29. Apparently "in order not to have witnesses of the criminal event," the shooters took aim at Nuñez-Baquedano's husband and shot him in the shoulder. *Id.* at 28–29, 60. Nuñez-Baquedano testified that she "cannot say" whether this event is tied to the three individuals involved in the theft from the trucking association, but she and her husband "started to think that it ha[d] to be them" because she and her husband had never experienced a similar event before. *Id*. at 29.

Third, in January 2013, Nuñez-Baquedano was shopping with a friend. She was approached by an individual who said, "You know everything of what's going on. If you don't leave the house in which you live, you know exactly what's coming to you." J.A. vol. II at 30. Nuñez-Baquedano took this as a threat. She made her way to the United States shortly thereafter.

## II.

In a decision issued on February 3, 2015, the IJ concluded that Nuñez-Baquedano had been a credible witness and had provided adequate corroboration of significant portions of her testimony, including a police report regarding her son's injury, an affidavit from her husband summarizing the shooting, and an affidavit from the friend who was with her when she was threatened. The IJ further concluded that "the central issue in this case, is whether there is a nexus between any harm that the respondent may have suffered in the past or may suffer

4

in the future, and one of the five protected grounds.  The issue, therefore is nexus." J.A. vol. I at 14.

Ultimately, the IJ concluded that Nuñez-Baquedano failed to establish a nexus between her membership in any "particular social group" ("PSG") and the harm she and her family experienced.  Accordingly, he denied her claims for asylum and withholding of removal.  The IJ then denied her CAT claim on the ground that she failed to meet her burden of proof, having put forth no evidence to demonstrate that the Honduran government would more likely than not inflict torture upon her or be willfully blind to torturous conduct directed at her should she return to Honduras.

Nuñez-Baquedano appealed to the BIA.  Counsel filed a Notice of Appeal on her behalf, which reads in relevant part:  "Respondent claims error in IJ's decision denying her claim for asylum, withholding and CAT protection. Respondent claims Particular Social Group membership of business owners; family member [*sic*]; and prosecution witness.  IJ found no recognizable PSG. Respondent claim [*sic*] series of events of persecution with acquiencense [*sic*]."

A.R. 025.[3]  Although counsel sought, and was granted, an extension of time in which to file a brief, no brief was filed.[4]

In a decision issued on August 23, 2016, the BIA adopted and affirmed the IJ's decision to deny Nuñez-Baquedano asylum and withholding of removal, concluding that, even accepting that any of her PSG definitions could be cognizable, Nuñez-Baquedano failed to demonstrate the required nexus between the harm she fears and her membership in any PSG.  The BIA also observed that she "failed to meaningfully challenge" the IJ's conclusion that she had not established a nexus between the proposed social group and her fear of harm. Finally, the BIA determined that her CAT claim was waived and therefore did not address its merits.

Nuñez-Baquedano timely filed a petition for review in this Court.

## III.

We have jurisdiction to review the BIA's final order of removal pursuant to the Immigration and Nationality Act ("INA") § 242(a)(1), 8 U.S.C. § 1252(a)(1). Where, as here, the BIA adopts or defers to portions of the IJ's decision, we will review those aspects of the IJ's decision as well.  *See Voci v. Gonzales*, 409 F.3d

---

[3] A.R. refers to the Administrative Record in this matter.

[4] There is nothing in the record explaining counsel's failure to file a brief on Nuñez-Baquedano's behalf.  Nuñez-Baquedano continues to be represented by the same attorney who represented her before the BIA.

607, 612 (3d Cir. 2005); *Abdulai v. Ashcroft*, 239 F.3d 542, 549 n.2 (3d Cir. 2001). We review legal determinations *de novo*, subject, where appropriate, to principles of *Chevron* deference. *Kaplun v. Att'y Gen.*, 602 F.3d 260, 265 (3d Cir. 2010). We review factual determinations for substantial evidence, upholding them so long as the evidence does not compel a contrary conclusion. *Sheriff v. Att'y Gen.*, 587 F.3d 584, 588–89 (3d Cir. 2009).

### A.

To obtain a grant of asylum, Nuñez-Baquedano bears the burden of demonstrating that she is a "refugee" within the meaning of INA § 101(a)(42), 8 U.S.C. § 1101(a)(42). *See* 8 C.F.R. § 208.13(a); *Abdulrahman v. Ashcroft*, 330 F.3d 587, 591–92 (3d Cir. 2003). To qualify, she must be unwilling or unable to return to Honduras because of "[past] persecution or well-founded fear of [future] persecution on account of . . . membership in a particular social group." INA § 101(a)(42), 8 U.S.C. § 1101(a)(42); *Chavarria v. Gonzales*, 446 F.3d 508, 516 (3d Cir. 2006). Similarly, to be granted withholding of removal, Nuñez-Baquedano bears the burden of establishing that her life or freedom would be threatened in Honduras "because of [her] . . . membership in a particular social group." INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A); *Gonzales-Posadas v. Att'y Gen.*, 781 F.3d 677, 684 (3d Cir. 2015). To qualify for either form of relief based upon membership in a PSG, she must: (1) identify the PSG within the meaning of

7

the INA; (2) establish that she is a member of that PSG; and (3) establish a nexus between membership in the PSG and any claimed persecution. *Fatin v. I.N.S.*, 12 F.3d 1233, 1240 (3d Cir. 1993).

Nuñez-Baquedano claimed to have suffered past harm and to have a well-founded fear of future harm based upon her membership in three proposed PSGs: (1) business owners; (2) family members of those who have been targeted; and (3) potential cooperating witnesses against criminal elements. The IJ concluded that Nuñez-Baquedano's family membership could potentially qualify as a PSG, as it is a socially distinct group, and membership in it is an immutable characteristic.[5]

---

[5] The IJ rejected Nuñez-Baquedano's claim for protection based on business ownership, concluding that business ownership is not an immutable characteristic. *See Matter of Acosta*, 19 I. & N. Dec. 211, 233 (B.I.A. 1985) (social group identity must be determined on a case-by-case basis but must be defined by a common characteristic that "members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences"); *see also Valdiviezo-Galdamez v. Att'y Gen.*, 663 F.3d 582, 597–98 (3d Cir. 2011) (discussing this Court's adoption of the *Acosta* formulation). As Nuñez-Baquedano correctly observes, however, the BIA has recognized that *past* experiences, such as past business ownership, might be a sufficiently immutable characteristic to qualify. *See Acosta*, 19 I. & N. Dec. at 233 ("[I]n some circumstances it might be a shared past experience such as former military leadership or land ownership."). The IJ did not address whether Nuñez-Baquedano's *past* business ownership could qualify. The IJ also did not address Nuñez-Baquedano's proposed PSG consisting of potential cooperating witnesses—although we observe that the BIA has held that confidential informants do not qualify because their group membership is not socially visible. *See Valdiviezo-Galdamez*, 663 F.3d at 599 (citing *In re C–A–*, 23 I. & N. Dec. 951, 960 (B.I.A. 2006). In addition, on appeal, Nuñez proposes an additional PSG: that she is a family member of a prosecution witness (her husband). This seems to be a hybrid of the two previously-proffered family and cooperating witness PSGs, and does not

*See Gonzales v. Thomas*, 547 U.S. 183, 186 (2006); *see also*, *e.g.*, *Sanchez-Trujillo v. I.N.S.*, 801 F.2d 1571, 1576 (9th Cir. 1986) ("Perhaps a prototypical example of a 'particular social group' would consist of the immediate members of a certain family . . . ."); *Gebremichael v. I.N.S.*, 10 F.3d 28, 36 (1st Cir. 1993) ("There can, in fact, be no plainer example of a social group based on common, identifiable and immutable characteristics than that of the nuclear family."). Yet, harm to one's family members, without more, does not automatically extend asylum protection to the entire family. *See In re A–K–*, 24 I. & N. Dec. 275, 278 (B.I.A. 2007) ("Automatically treating harm to a family member as being persecution to others within the family is inconsistent with the derivative asylum provisions, as it would obviate the need for these provisions in many respects."). Accordingly, it was appropriate to focus, as the IJ and BIA did, on the issue of whether there is a nexus between Nuñez-Baquedano's membership in any PSG, including her family, and any past or future harm she may face.[6]

---

appear to have been presented to the IJ and BIA as a separate PSG. Because it was not previously presented to the agency as an independent PSG, we lack jurisdiction to consider it here. *See Castro v. Att'y Gen.*, 671 F.3d 356, 365 (3d Cir. 2012). In any event, because we agree with the agency's assessment that Nuñez-Baquedano did not satisfy the nexus requirement, we need not consider whether any of her additional proposed PSGs could potentially qualify.

[6] Recently, in *Serrano-Alberto v. Att'y Gen.*, 859 F.3d 208 (3d Cir. 2017), this Court sharply criticized the BIA for frequently declining to consider a petitioner's proposed PSG and, instead, disposing of the appeal by finding an absence of nexus. *Id.* at 219 n.5. In this case, however, because Nuñez-Baquedano put forth a

The IJ concluded that Nuñez-Baquedano's "proof in this case was woefully short of establishing that the reason for any potential threat or harm to her in the past or in the future is because she is a member of this family." J.A. vol. I at 15. Specifically, the IJ determined that the two disparate incidents experienced by her son and husband were not shown to be linked to each other, or to Nuñez-Baquedano herself. Among other things, the IJ noted that the driver's subsequent attempt at a settlement was inconsistent with her belief that her son's injuries resulted from a plan to deliberately harm him. In addition, her husband described the shooting event as an attempt to silence him as a witness to that event, not as retribution for reporting members of the trucking association to police. Thus, the IJ determined there was "no basis to believe that there is a concerted assault upon members of this family." J.A. vol. I at 16.

As to the threat against Nuñez-Baquedano herself, the IJ concluded that this single incident was unrelated to the harm suffered by her husband and son, and did not, without more, qualify as past persecution or give rise to a well-founded fear of future persecution. *See Li v. Att'y Gen.*, 400 F.3d 157, 164 (3d Cir. 2005) (threats, standing alone, qualify as persecution in only a small category of cases, and only when the threats are so menacing as to cause "significant actual suffering or harm"). The IJ observed that Nuñez-Baquedano experienced only this isolated

PSG that could qualify under some circumstances, it was appropriate for the agency to consider whether or not she satisfied the nexus requirement.

10

threat, and that her husband remained in Honduras for almost a year and a half without experiencing further threats or harm.

The IJ concluded by recognizing that "the respondent deeply believes these are connected incidents," and by acknowledging that he had no satisfying explanation for the terrible events that befell Nuñez-Baquedano and her family members. But, he observed a "vacuum of evidence [of] actual linkage" between the events." J.A. vol. I at 18. He also noted that Honduras "has a great deal of crime," and that "respondent is, for lack of a better term, unlucky." *Id.* at 19. The IJ thus determined that, "while her fears of harm are real, they are not within the asylum law of the United States." *Id.* at 20.

Upon review, it is clear that the record contains substantial evidence to support the IJ's conclusion, adopted by the BIA, that Nuñez-Baquedano failed to demonstrate that the two instances of serious injury to her family members and one instance of a threat to her were linked to one another or to her membership in any PSG. Nuñez-Baquedano does not identify any evidence compelling a conclusion that the IJ and BIA erred in this regard. Indeed, she fails to address the nexus issue entirely. Accordingly, we will deny Nuñez-Baquedano's petition for review as to her claims for asylum and withholding of removal.

B.

11

Next we consider Nuñez-Baquedano's CAT claim, which the BIA deemed waived and therefore did not consider on its merits. A court may not review a final order where the alien has failed to exhaust all administrative remedies available as of right. INA § 242(d)(1), 8 U.S.C. § 1252(d)(1). The exhaustion requirement attaches to each issue that a petitioner raises. *See Lin v. Att'y Gen.*, 543 F.3d 114, 120 & n.6 (3d Cir. 2008). Accordingly, where an issue was not presented to the BIA, it has not been administratively exhausted, and we lack jurisdiction to consider it. *Castro*, 671 F.3d at 365 ("A petitioner's failure to exhaust an issue by presenting it to the BIA deprives us of jurisdiction to consider that issue."). Where, however, "the petitioner 'made some effort to exhaust, albeit insufficient,' we will exercise jurisdiction over the petitioner's claims." *Lin*, 543 F.3d at 122 (quoting *Bhiski v. Ashcroft*, 373 F.3d 363, 367 (3d Cir. 2004)).

Here, Nuñez-Baquedano presented a CAT claim to the IJ, which the IJ denied for a failure to meet the burden of proof. On appeal to the BIA, she submitted only a Notice of Appeal stating, *inter alia*, that the IJ erred because "Respondent claim series of events of persecution with acquiencense [*sic*]." A.R. 025. The BIA concluded that this vague reference, without a brief to elaborate the point, constituted a waiver. *See* J.A. vol. I at 4 n.1 (citing *Matter of R-A-M-*, 25 I. & N. Dec. 657, 658 n.2 (B.I.A. 2012)).

Nuñez-Baquedano now argues that she should prevail on the merits of her CAT claim, while the government responds that we lack jurisdiction to review that claim because it was not exhausted before the BIA. Under these circumstances, we decline to adopt either approach. While no surrogate for proper briefing, the reference to the CAT claim in Nuñez-Baquedano's Notice of Appeal to the BIA constitutes "some effort to exhaust, albeit insufficient" to present that claim. *Lin*, 543 F.3d at 122. Her mention of "acquiencense [*sic*]," while far from satisfactory, nonetheless put the BIA on notice that she intended to contest the IJ's conclusion that she put forth no evidence that the Honduran government would acquiesce in her torture. Because Nuñez-Baquedano's minimal effort to present the CAT claim preserved it for administrative exhaustion purposes, we must remand her claim to the BIA to consider its merits in the first instance. *See I.N.S. v. Ventura*, 537 U.S. 12, 17 (2002).

## IV.

For the foregoing reasons, we will deny the petition for review as to Nuñez-Baquedano's claims for asylum and withholding of removal. We will grant the petition as to her CAT claim and remand to the BIA for further proceedings consistent with this opinion.