**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 15, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

FRANCISCO JAVIER ZARZA-
ESCAMILLA,

     Petitioner,

v.

WILLIAM P. BARR, United States
Attorney General,

     Respondent.

No. 19-9575
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **HOLMES**, and **MORITZ**, Circuit Judges.
_____

Francisco Javier Zarza-Escamilla, a native and citizen of Mexico, seeks review of

a Board of Immigration Appeals' (BIA's) decision denying his motion to reopen removal

proceedings. Exercising jurisdiction under 8 U.S.C. § 1252(a), we deny the petition.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

BACKGROUND

Mr. Zarza unlawfully entered the United States on an unspecified date in March 2006, and he has resided here continuously, with the exception of a one-month absence in 2008. In March 2011, the Department of Homeland Security (DHS) personally served him with a notice to appear before an Immigration Judge (IJ) for a removal hearing. The notice to appear did not specify a date and time for the hearing, but a subsequently served notice of hearing supplied that information.

After two continuances, Mr. Zarza appeared before an IJ in April 2013. Through attorney Dana Nottingham, Mr. Zarza conceded removability and moved for administrative closure, asserting he had no criminal history and was the sole provider for his wife and multiple U.S. citizen children, one of whom suffers from serious health issues, including Down's Syndrome. The IJ denied the motion, noting that Mr. Zarza had presented a "very sympathetic" case, but had not demonstrated a ground for closure, given that he "was not immediately eligible [for] any type of relief from removal and might only become eligible in the distant future." R. at 371.

In February 2014, after another continuance, Mr. Zarza appeared before the IJ for his final removal hearing. Attorney Nottingham acknowledged that Mr. Zarza "appear[ed] to only qualify for voluntary departure," and he requested a continuance so Mr. Zarza could "get his affairs in order" and seek voluntary departure. *Id.* at 364. The IJ declined to grant any more continuances and noted DHS had decided against exercising its prosecutorial discretion to forgo removal proceedings. After conferring with Nottingham, Mr. Zarza requested post-conclusion voluntary departure so he could

preserve his ability to appeal the denial of a continuance. The IJ granted the request. The IJ then informed him that he had sixty days to depart the country, and that if he appealed to the BIA, he would have to show proof of posting a departure bond if he wanted the BIA to consider reinstating voluntary departure on appeal. Mr. Zarza posted a $500 departure bond.

In March 2014, Nottingham filed a notice of appeal on behalf of Mr. Zarza, asserting that he should have been granted a continuance because he needed "more time to care for [his] family." *Id.* at 326. Two months later, in May 2014, the Colorado Supreme Court suspended Nottingham's license to practice law.

In June 2014, attorney John Prater entered his appearance in the BIA for Mr. Zarza and filed an appellate brief.[1] Like the notice of appeal, the brief stated that a continuance should have been granted to allow Mr. Zarza more time to "prepare his family for his departure." *Id.* at 299. While the appeal was pending, in 2015, the Colorado Supreme Court disbarred Nottingham.

In January 2016, the BIA determined that Mr. Zarza had not demonstrated good cause for a continuance. In particular, the BIA noted he had no pending applications for relief from removal and had identified no available relief. Consequently, the BIA dismissed Mr. Zarza's appeal, but it reinstated the sixty-day period for voluntary departure.

---

[1] Prater had previously filled in for Nottingham on behalf of Mr. Zarza when Nottingham could not attend a hearing in 2013. During that hearing, Prater simply obtained a continuance until Nottingham could be present.

Mr. Zarza did not depart, however. Instead, in October 2018, nearly three years after the BIA's decision, he filed the instant motion to reopen, utilizing new counsel. He argued "the [BIA] should reopen the[ ] proceedings to allow [him] to proceed with his applications for asylum, withholding, and protection under the Convention Against Torture [CAT] [submitted with the motion] and consideration for cancellation of removal." *Id.* at 24. He also claimed he would have timely pursued those avenues but for Nottingham's ineffective assistance.[2]

The BIA denied Mr. Zarza's motion. The BIA assumed that he had met the procedural requirements for asserting ineffective assistance to toll the 90-day deadline for filing a motion to reopen. But the BIA concluded there was no tolling because he failed to show prejudice from Nottingham's performance. Specifically, relying on *Matter of A-K-*, 24 I. & N. Dec. 275 (BIA 2007), the BIA determined Mr. Zarza was ineligible for asylum, withholding of removal, and CAT relief based on his claim that he feared future persecution in the form of his special-needs son being institutionalized in Mexico. In regard to cancellation of removal, the BIA determined he was ineligible because (1) his continuous presence in the U.S. ended on April 11, 2011, when DHS served the notice of hearing; and alternatively (2) he failed to depart the country pursuant to the BIA's grant

---

[2] In the motion to reopen, Mr. Zarza did not claim ineffective assistance by anyone other than Nottingham. Thus, to the extent he attempts to advance an ineffective-assistance claim based on Prater's representation, the claim is unexhausted. *See* 8 U.S.C. § 1252(d)(1) (providing that "[a] court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available."); *Garcia-Carbajal v. Holder*, 625 F.3d 1233, 1237 (10th Cir. 2010) ("[A]n alien must present the same specific legal theory to the BIA before he or she may advance it in court." (emphasis omitted)).

of voluntary departure or show that his failure to depart was the result of ineffective assistance of counsel. Finally, the BIA declined to sua sponte reopen proceedings because Mr. Zarza "ha[d] not shown truly exceptional circumstances or a substantial likelihood that the result in his case would be changed if reopening were granted." R. at 6.

## DISCUSSION
## I. Standard of Review

We review the BIA's denial of a motion to reopen for abuse of discretion. *Maatougui v. Holder*, 738 F.3d 1230, 1239 (10th Cir. 2013). "The BIA abuses its discretion when its decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements." *Id.* (internal quotation marks omitted).

## II. Motions to Reopen

In general, an alien must file a motion to reopen within ninety days of the final order of removal. *See* 8 U.S.C. § 1229a(c)(7)(C)(i). But the filing deadline may be equitably tolled if the motion to reopen is based on ineffective assistance of counsel. *Mahamat v. Gonzales*, 430 F.3d 1281, 1283 (10th Cir. 2005). To succeed on a claim of ineffective assistance, an alien must show prejudice from counsel's deficient performance. *See Ochieng v. Mukasey*, 520 F.3d 1110, 1115 (10th Cir. 2008); *Matter of Lozada*, 19 I. & N. Dec. 637, 638 (BIA 1988). An alien shows prejudice by demonstrating that he would have been entitled to relief if it were not for counsel's performance. *See Duran-Hernandez v. Ashcroft*, 348 F.3d 1158, 1163 (10th Cir. 2003).

5

## A.     Withholding of Removal[3]

To obtain withholding of removal, an alien must show that his "life or freedom would be threatened in th[e] country [of removal] because of [his] race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1231(b)(3)(A).  "The Attorney General may not remove an alien who establishes a clear probability of persecution in the country to which he would be returned."  *Niang v. Gonzales*, 422 F.3d 1187, 1195 (10th Cir. 2005) (internal quotation marks omitted).

Mr. Zarza argues he qualifies for withholding because he fears that in Mexico, his special-needs son "would face systematic abuse, mistreatment, and torture" in a government-run institution for the mentally disabled.  Pet'r Br. at 45.  Mr. Zarza does not dispute that "acts of persecution against the [alien's] family members do not serve to establish a risk of future persecution to the applicant himself."  *Matter of A-K-*, 24 I. & N. Dec. at 278; *see also id.* at 279 ("[T]here is simply no statutory or regulatory authority for [an alien] to claim withholding of removal based on threatened hardship to [the alien's] U.S. citizen [child].").  Rather, Mr. Zarza argues his withholding claim falls within *Matter of A-K-*'s exception for aliens who "would be the target of the emotional persecution that arises from physical harm to a loved one," *id.* at 278.  Such a claim is cognizable "where a person persecutes someone close to an applicant, such as a spouse,

_____

[3] Mr. Zarza states he is not challenging the BIA's decision with respect to asylum and CAT relief.  Pet'r Br. at 38, 39.

parent, child or other relative, *with the intended purpose of causing emotional harm to the applicant*, but does not directly harm the applicant himself." *Id.* (emphasis added).

Mr. Zarza contends that the *Matter of A-K-* exception applies to his case if it is extended to those circumstances where the persecutor intends only to "impact[] the applicant in some way," resulting in emotional harm to the applicant. Pet'r Br. at 49.[4] He argues that reformulating the exception is necessary because Tenth Circuit precedent is inconsistent with *Matter of A-K-*'s "requirement that the persecutor's motive be punitive or malignant," *id.* at 47. But Mr. Zarza's argument is flawed in two significant respects.

First, *Matter of A-K-* contains no requirement that the persecutor's motive be punitive or malignant. Rather, it requires only some intent to emotionally harm the applicant through "a pattern of persecution tied to the applicant personally," *Matter of A-K-*, 24 I. & N. Dec. at 278, because "incidental psychological suffering of the parent occasioned by harm to her child" is not enough, *id.* at 276-77.

Second, Tenth Circuit caselaw is consistent with *Matter of A-K-*'s mandate of "persecution tied to the applicant personally," *id.* at 278. For instance, this court has held that "[f]or persecution to be on account of a statutorily protected ground, the victim's protected characteristic *must be central to the persecutor's decision to act against the victim*." *Rivera-Barrientos v. Holder*, 666 F.3d 641, 646 (10th Cir. 2012) (emphasis

---

[4] Under Mr. Zarza's formulation of the exception, he will suffer persecution in the form of emotional harm because "the people running Mexico's facilities for" the disabled use outdated and harmful mental-health practices, "[d]espite their subjective intentions of helping families with disabled family members." Pet'r Br. at 49-50.

added; brackets and internal quotation marks omitted). And although this court has not yet addressed whether the *Matter of A-K-* exception reaches a parent's emotional suffering based on a child's persecution, other circuits have concluded it does not, holding instead that "any claim by a parent of psychological harm based solely on a child's potential persecution" fails to provide "a basis for immigration relief to the [parent]." *Camara v. Holder*, 725 F.3d 11, 16 (1st Cir. 2013) (internal quotation marks omitted) (collecting cases).

We agree with those circuits and conclude that the BIA properly determined that ineffective assistance of counsel did not prejudice Mr. Zarza in regard to withholding of removal.

**B.      Cancellation of Removal**

An alien subject to removal may apply to have his removal cancelled if he can show, among other things, ten years of continuous physical presence in the United States. 8 U.S.C. § 1229b(b)(1)(A). Under this rule, Mr. Zarza would have become eligible for cancellation of removal in March 2016.[5]

But the period of continuous physical presence is "deemed to end" when a notice to appear is served on the alien. *Id.* § 1229(d)(1)(A). DHS served Mr. Zarza in March 2011. Although there is no such termination if, as occurred here, the notice to appear "fails to specify either the time or place of the removal proceedings," *Pereira v. Sessions*,

---

[5] Mr. Zarza's continuous physical presence was not interrupted by his one-month absence from the country in 2008. *See* 8 U.S.C. § 1229b(d)(2) (providing that continuous physical presence requires that the alien not have left "the United States for any period in excess of 90 days or for any periods in the aggregate exceeding 180 days").

138 S. Ct. 2105, 2110 (2018), the BIA concluded that the notice of hearing served on Mr. Zarza in April 2011 cured the defects in the notice to appear and ended his continuous physical presence before he accrued ten years in this country.

In reaching that conclusion, the BIA relied on *Matter of Mendoza-Hernandez*, 27 I. & N. Dec. 520, 535 (BIA 2019) ("hold[ing] that where a notice to appear does not specify the time and place of an alien's initial removal hearing, the subsequent service of a notice of hearing containing that information 'perfects' the deficient notice to appear"). This court recently rejected the holding of *Matter of Mendoza-Hernandez. See Banuelos-Galviz v. Barr*, 953 F.3d 1176, 1181 (10th Cir. 2020) (concluding "that continuous presence ends only when the noncitizen is served with a single notice to appear, not a combination of two documents"). Thus, the BIA erred in determining that Mr. Zarza could not have satisfied the durational requirement for cancellation of removal.

Nevertheless, the BIA also determined that Mr. Zarza was ineligible for cancellation because he failed to depart the country pursuant to the BIA's reinstatement of voluntary departure, and he had not shown that ineffective assistance of counsel caused his failure to depart. An alien granted voluntary departure who fails to voluntarily depart within the specified time period is "ineligible, for a period of 10 years, to receive any further relief," including cancellation of removal. 8 U.S.C. § 1229c(d)(1)(B). But an alien "who, through no fault of h[is] own, remains unaware of the grant of voluntary departure until after the period for voluntary departure has expired cannot be said to have 'voluntarily' failed to depart within the period of voluntary departure." *Matter of Zmijewska*, 24 I. & N. Dec. 87, 94 (BIA 2007).

9

Mr. Zarza argues that his failure to depart was not voluntary because he was unaware of the BIA's January 6, 2016, order dismissing his appeal and reinstating voluntary departure to March 6, 2016. He claims Nottingham failed to notify him of that decision, did not file a change-of-address form with the BIA showing that he (Mr. Zarza) had moved to a new address, and did not disclose his disbarment. We are not persuaded.

Mr. Zarza cannot claim he was unaware that he was subject to voluntary departure. He was present at the February 2014 hearing when the IJ denied his motion for another continuance, granted his alternative motion for voluntary departure, and warned him that if he appealed, the BIA would consider allowing him to voluntarily depart after issuing its decision only if he posted a departure bond within the next five days, which he did. And Mr. Zarza conceded in his declaration before the BIA that the IJ advised him he "had to leave." R. at 31.

Yet, when the BIA dismissed Mr. Zarza's appeal and reinstated voluntary departure to March 6, 2016, he did not depart the country. Indeed, he has not argued he ever made arrangements to voluntarily depart. Rather, he contends that Nottingham's ineffective assistance deprived him of an opportunity to retain new counsel so he could "discuss his options for possibly extinguishing the voluntary departure order," Pet'r Br. at 69.

Granted, when the BIA mailed a copy of its decision to Prater, it was returned by the post office as undeliverable. But the BIA also sent a copy to Mr. Zarza, and there is no indication in the record that it was not forwarded to his new address.[6]

Moreover, Mr. Zarza does not explain precisely when he learned of the BIA's January 6, 2016, decision. In his declaration, he states only that he "learned about the decision in March 2016, when [he] went to check in with immigration, but was told [he] was being deported." R. at 32. And he does not explain what prompted him to "check in" with authorities around the BIA's deadline for him to voluntarily depart.

In short, Mr. Zarza has not shown that his failure to depart the country by March 6, 2016, was involuntary. Accordingly, we conclude that the BIA did not err in determining Mr. Zarza was ineligible for cancellation of removal.

Because Mr. Zarza was not eligible for either withholding or cancellation of removal, the BIA did not abuse its discretion in denying his motion to reopen.

## C.    Sua Sponte Reopening

We generally lack jurisdiction to review the BIA's exercise of discretion in deciding whether to sua sponte reopen removal proceedings. *See Salgado-Toribio v. Holder*, 713 F.3d 1267, 1270-71 (10th Cir. 2013). But we do retain jurisdiction to review constitutional claims or questions of law raised in a petition for review. *Id.* at 1271.

---

[6] Contrary to Mr. Zarza's assertion, the envelope in the record marked by the post office as "not deliverable" was not sent to his old address. R. at 288. Rather, that envelope bears Prater's zip code, *id.* at 284, indicating that the copy of the BIA's decision sent to Prater was returned as undeliverable.

11

Relying on his arguments supporting withholding and cancellation of removal, Mr. Zarza contends that the BIA's rejection of sua sponte reopening rests on an incorrect legal premise. We retain jurisdiction to review that question of law. *See Reyes-Vargas v. Barr*, 958 F.3d 1295, 1300 (10th Cir. 2020). But given our conclusion that he was not eligible for withholding or cancellation of removal, his challenge to the BIA's denial of sua sponte reopening necessarily fails.

## CONCLUSION

We deny the petition for review. We grant Mr. Zarza's motion for leave to proceed in forma pauperis. But because 28 U.S.C. § 1915(a)(1) excuses only "prepayment of fees," Mr. Zarza remains responsible for paying the full docketing and filing fee to the Clerk of this Court.

Entered for the Court

Nancy L. Moritz
Circuit Judge